1  Dan Stormer, Esq. [S.B.#101967]
2  David Washington, Esq. [S.B. #305996]
   Hadsell Stormer Renick & Dai LLP
3  128 N. Fair Oaks Avenue
   Pasadena, California 91103
4  Telephone: (626) 585-9600
   Facsimile: (626) 577-7079
5  E-mails: dstormer@hadsellstormer.com
            dwashington@hadsellstormer.com
6
   Attorneys for Plaintiffs
7  JOEL STALLWORTH, TAMIYA DICKERSON,
   and Minor Plaintiff S.S.

8

9

10
                    **UNITED STATES DISTRICT COURT**
11                  **CENTRAL DISTRICT OF CALIFORNIA**

12 | JOEL STALLWORTH, TAMIYA          | Case No.: 2:20-cv-05985-VAP (GJSx)
   | DICKERSON, and Minor Plaintiff S.S.,
13 |                                   | [Assigned to the Honorable Virginia A.
   |            Plaintiffs,            | Phillips – Courtroom #8A]
14 |
   |     v.                           |
15 |                                   | **PLAINTIFFS' OPPOSITION TO**
   | NIKE RETAIL SERVICES, INC.,      | **DEFENDANT NIKE RETAIL**
16 | WENDY MAGEE, and DOES 1-10,      | **SERVICES, INC.'S MOTION TO**
   |                                   | **DISMISS PLAINTIFFS' FIRST,**
17 |            Defendants.           | **SECOND, THIRD, FIFTH, SIXTH,**
   |                                   | **SEVENTH, EIGHTH, NINTH, AND**
18 |                                   | **TENTH CAUSES OF ACTION**

19
                                       Date:       November 16, 2020
20                                     Time:       2:00 p.m.
                                       Courtroom: 8A
21
                                       Complaint filed: July 4, 2020
22                                     Disc. Cut-Off:   None set
                                       Motion Cut-Off:  None set
23                                     Trial Date:      None set

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................... 1

    A. Factual Background ................................................................ 1

    B. Procedural Background .......................................................... 3

III. ARGUMENT ....................................................................................... 3

    A. Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6) ......... 3

    B. Defendant's Motion to Dismiss Plaintiffs' First Cause of Action Under 42 U.S.C. § 1983 Should Be Denied .................... 3

    C. Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action Under 42 U.S.C. § 1981 Should Be Denied ..................... 3

    D. Defendant's Motion to Dismiss Plaintiffs' Tenth Cause of Action Under 42 U.S.C. § 1985 Should Be Denied .................. 8

    E. Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action Under the Ralph Act (Cal. Civ. Code § 51.7) Should Be Denied .............. 8

    F. Defendant's Motion to Dismiss Plaintiffs' Fifth Cause of Action for Assault Should Be Denied ........................................ 10

    G. Defendant's Motion to Dismiss Plaintiffs' Sixth Cause of Action for IIED Should Be Denied ............................................ 11

    H. Defendant's Motion to Dismiss Plaintiffs' Seventh Cause of Action for Slander Should Be Denied ...................................... 13

    I. Defendant's Motion to Dismiss Plaintiffs' Eighth Cause of Action for Negligent Supervision and Retention Should Be Denied ......... 14

    J. Defendant's Motion to Dismiss Plaintiffs' Ninth Cause of Action for False Imprisonment Should Be Denied ...................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.    CONCLUSION ................................................................................................ 17

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

### Federal Cases

4

*Ashcroft v. Iqbal*,

5
    556 U.S. 662 (2009) ............................................................. 3

6

*Bell Atlantic Corp. v. Twombly*,

7
    550 U.S. 544 (2007) ............................................................. 3

8

*Campbell v. Feld Entm't, Inc.*,

9
    75 F. Supp. 3d 1193 (N.D. Cal. 2014) ................................. 10

10

*Cruz v. Donnelly*,

11
    727 F.2d 79 (3rd Cir. 1984) ................................................. 4

12

*Drayton v. Toys R. Us*,

13
    645 F. Supp. 2d 149 (S.D.N.Y. 2009) ........................... 5, 6, 7

14

*Gillespie v. Civiletti*,

    629 F.2d 637 (9th Cir. 1980) ............................................... 8

15

*Gramenos v. Jewel Cos.*,

16
    797 F.2d 432 (7th Cir. 1986) ............................................... 4

17

*Griffin v. Breckenridge*,

18
    403 U.S. 88 (1971) .............................................................. 8

19

*Jackson v. Local 705, Int'l Bhd. of Teamsters*,

20
    2002 U.S. Dist. LEXIS 4908 (N.D. Ill. 2002) ................... 12

21

*United Steelworkers of America v. Phelps Dodge Corp.*,

22
    865 F.2d 1539 (9th Cir. 1989) ......................................... 4, 5

23

*Veronica Fair v. Terrible Herbst, Inc.*,

24
    2007 U.S. Dist. LEXIS 29542 (D. Nev. 2007) ................... 15

25

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,

    274 F.3d 1276 (9th Cir. 2001) ............................................. 9

26

### California Cases

27

*In re B.L.*,

28
    239 Cal. App. 4th 1491 (2015) ............................................ 9

*Collins v. County of Los Angeles*,
   241 Cal.App.2d 451 (1966)...................................................................16

*DeTomaso v. Pan American World Airways, Inc.*,
   218 Cal. Rptr. 746,
   1985 Cal. App. LEXIS 2593, 172 Cal. App. 3d 1170 (1985) ..............13

*Doe v. Capital Cities*,
   50 Cal.App.4th 1038 (1996) ..................................................................14

*Evan F. v. Hughson United Methodist Church*
   8 Cal.App.4th 828 (1992) ......................................................................14

*Fletcher v. Western National Life Ins. Co.*,
   10 Cal. App. 3d 376 (1970)....................................................................12

*Harris v. Capital Growth Investors XIV*,
   52 Cal. 3d 1142 (Cal. 1991)....................................................................7

*Kisesky v. Carpenters' Trust For So. California*,
   144 Cal. App. 3d 222 (1983) ..................................................................11

*Lowry v. Standard Oil Co.*,
   63 Cal.App.2d 1. (1944)..........................................................................11

*Neary v. Regents of Univ. of Cal.*,
   185 Cal. App. 3d 1136 (1986).................................................................13

*People v. Wright*,
   100 Cal. App. 4th 703 (2002) .................................................................10

*Roman Catholic Bishop v. Superior Court*,
   42 Cal.App.4th 1556 (1996) ...................................................................14

*So v. Shin*,
   212 Cal. App. 4th 652 (2013) .................................................................11

**Federal Statutes**

42 U.S.C.
   § 1981....................................................................................*passim*
   § 1983....................................................................................*passim*
   § 1985............................................................................1, 8, 17

1

### California Statutes

2

Cal. Civ. Code

3

§ 46 .................................................................................................. 13

§ 47(b) ..................................................................................... 12, 13

4

§ 51.5 ............................................................................................ 1, 7

§§ 51.7 ............................................................................... 1, 8, 9, 17

5

6

State Executive Law

§ 296 ............................................................................................ 6, 7

7

8

### Other Authorities

9

Fed. R. Civ.Proc. 8(a)(2) ..................................................................... 3

10

Fed. R. Civ.Proc. 12(b)(6) ................................................................... 3

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

On July 5, 2019 Plaintiffs Joel Stallworth, TaMiya Dickerson, and minor child SS ("Plaintiffs," collectively) were chased, harassed, and assaulted by Defendant Wendy Magee ("Magee"), erstwhile manager of the Nike Store located on the Santa Monica Promenade at 395 Santa Monica Place, Santa Monica, CA, 900401. With nothing to go on but the color of Plaintiffs' skin, she accused them of stealing a child-sized basketball that Mr. Stallworth had purchased moments beforehand, and she enlisted three armed Santa Monica Police Department ("SMPD") officers to detain them until they were forced to present a receipt for the ball.

Nike's actions, by and through its employee Magee, violated Plaintiffs' rights under 42 U.S.C. §§ 1981, 1983, and 1985, as well as under California state law pursuant to Cal. Civ. Code §§ 51.7, 51.5, and the common law torts of Assault, Intentional Infliction of Emotional Distress ("IIED"), Slander, and Negligent Supervision and Retention.

Nike now moves to dismiss Plaintiffs' First (42 U.S.C. § 1983), Second (42 U.S.C. § 1981), Third (Ralph Act—Cal. Civ. Code § 51.7), Fifth (Assault), Sixth (Intentional Infliction of Emotional Distress ["IIED"]), Seventh (Slander), Eighth (Negligent Supervision and Retention), Ninth (False Imprisonment), and Tenth (42 U.S.C. § 1985) Causes of Action. Plaintiff herein opposes Defendant's motion. Additionally, Plaintiff requests that to the extent that the Court is inclined to agree with Defendant's argument as to Plaintiff's First, Second, Third, and Tenth Causes of Action, the Court grant Plaintiffs leave to amend the Complaint as to these claims.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

On July 5, 2019, Mr. Stallworth, a designer and former Nike-Sponsored Team USA Track and Field Athlete and college basketball hall of famer, his wife, Ms. Dickerson, a high-ranking partner at Grant Thornton advisory agency, and their young child SS took a trip to the Santa Monica Promenade. Compl. ¶¶ 30-35, 54, 74. They were

1  hosting their friend Rebecca and her son Khalil, who were visiting them from the Bay
2  Area. Compl. ¶ 74.

3       Plaintiffs decided to take their friends to the Santa Monica Promenade to go
4  shopping and eat dinner together in celebration of Rebecca's birthday. Compl. ¶ 74.
5  Before dinner, Plaintiffs went to the Nike store on Santa Monica's busy Third Street
6  Promenade. Compl. ¶¶ 74-75. Choosing Nike was not happenstance. Unaware of the
7  slew of gender and racial discrimination cases lodged against Nike in recent years and
8  unaware that they were walking into a store that managed by a woman with a history of
9  anti-Black racism, they were armed only with a family affinity for Nike resulting fromn
10  Mr. Stallworth's professional connections with the company and Nike's clever
11  advertisement messaging. Compl. ¶¶ 34, 74.

12       As soon as Plaintiffs walked out of the store with the child-sized basketball that
13  Mr. Stallworth had purchased for SS, Magee sprang into action. Seeing a Black man with
14  a ball in his hand was all she needed to know that Mr. Stallworth was a thief. Compl. ¶
15  78. Magee accosted the family in front of dozens of people on the promenade, placing
16  her body between Ms. Dickerson and Mr. Stallworth and SS, blocking Mr. Stallworth's
17  path. Compl. ¶ 78. She demanded that Mr. Stallworth give her "the stolen basketball" and
18  lunged at him and attempted to snatch it out of his hands. Compl. ¶ 78. Mr. Stallworth
19  asked her to leave him alone, but she refused and remained in place, continuing to block
20  his path. Compl. ¶ 78.

21       Hearing the commotion, Ms. Dickerson started back toward her family. Compl. ¶¶
22  78-81. Just then, Magee ran toward three armed SMPD officers, enlisting them to
23  amplify her own prejudices by pointing at Mr. Stallworth and accusing him of theft
24  while providing exactly no corroborating information. Compl. ¶ 81. Magee and the
25  armed officers approached Plaintiffs and surrounded them. Compl. ¶ 81. The officers,
26  refusing to investigate beyond Magee's obvious lie and exercising no independent
27  judgment of their own, detained Plaintiffs. Compl. ¶¶ 81 ,83. The detention only ended
28  when Plaintiffs relented and Mr. Stallworth provided his receipt. Compl. ¶ 86.

As Plaintiffs announced that they would attempt to return the ball for a full refund, the officers and Magee followed them at close clip. Compl. ¶¶ 89-93. After returning the ball and being told by an employee that Magee "does this all the time," the officers parted from the doors of the Nike store and permitted them to leave. Compl. ¶¶ 91-92. They left the Promenade as quickly as possible. Compl. ¶¶ 91-93. Their lives have been significantly altered ever since.

**B.      Procedural Background**

On July 4, 2020, Plaintiffs filed their Complaint. On October 1, 2020 counsel for Defendant Nike sent an email initiating the meet and confer process pursuant to Local Rule 7-3. On October 13, 2020, Defendant Nike filed the Motion to Dismiss that is the subject of this Response. Dkt. No. 19.

### III.    ARGUMENT

**A.      Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)**

Defendant Nike moves to dismiss Plaintiffs' claims under Rule 12(b)(6).  A properly pled complaint need provide only "[a] short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.Proc. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court must accept all well-pled factual allegations as true and draw all reasonable inferences in Plaintiffs' favor.  *Id*.; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where a complaint contains factual matter sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," a 12(b)(6) motion must fail.  *Iqbal*, 556 U.S. at 678.

**B.      Defendant's Motion to Dismiss Plaintiffs' First Cause of Action Under 42 U.S.C. § 1983 Should Be Denied**

Defendant argues that Plaintiffs have not established a conspiracy such that Nike and Magee can be held liable under 42 U.S.C. § 1983. As described below, Plaintiffs have adequately pled that the SMPD officers' judgment was suspended and substituted for that of Magee, which is itself indicative of a conspiracy pursuant to Ninth Circuit case law. In any event, to the extent that the Court agrees with Defendant, Plaintiff, having

been made aware of additional facts regarding coordination between Nike (and other stores on the Promenade), Magee, and the Santa Monica Police Department, seeks leave to amend the Complaint in order to include such facts and allegations.

In *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541, 1989 (9th Cir. 1989), the Ninth held that while "each participant in the conspiracy need not know the exact details of the plan, [ ] each participant must at least share the common objective of the conspiracy." The Court also held, "Evidence that police failed to exercise independent judgment will support the inference of conspiracy with a private party." *Id.* And, as noted by Defendant, a store and its employees may be held liable under § 1983 where "(1) the police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause." *Cruz v. Donnelly*, 727 F.2d 79, 81 (3rd Cir. 1984). As the Seventh Circuit notes,

> *Adickes* [*v. S.H. Kress & Co.*, 398 U.S. 144 (1970)], the last in a line of cases in which restaurateurs and others used the trespass or vagrancy laws to enforce racial segregation long after it became clear that the state may not discriminate on account of race, has become the basis for a rule that shopkeepers are engaged in 'state action' when they strike a deal with the police under which the police simply carry out the shopkeepers' directions.

*Gramenos v. Jewel Cos.*, 797 F.2d 432, 435 (7th Cir. 1986). Plaintiffs have clearly alleged that it took nothing more than for Magee to point to Joel and say "he stole a ball" for SMPD to detain him. Compl. ¶¶ 78, 102, n. 28. In other words, Plaintiffs have alleged that the SMPD officers failed to exercise independent judgment by, e.g., asking Magee on what information she based her accusation. Evidence of such substituted judgment provides a basis for extending § 1983 liability to private actors. *See Cruz*, 727 F.2d at 81. While it generally does not suffice to show that a police officer fulfilled a private actor's request to arrest someone, courts will impose liability where it is evident the police officer would not have acted without the private actor's order. *Id.* And a

failure to investigate, though not dispositive, has been deemed sufficiently demonstrative of conspiratorial conduct. *See United Steelworkers of America*, 865 F.2d at 1541.

Plaintiff has adequately pled the substituted judgment that establishes a basis for extending § 1983 liability to private actors like Defendant. To the extent that the Court requires more, if permitted to amend their Complaint, Plaintiffs will allege that the detention in this case occurred pursuant to the SMPD's agreement with shopkeepers in and around the Third Street Promenade (specifically including Defendants Nike and Magee) whereby SMPD detains all individuals shopkeepers accuse of theft or against whom shopkeepers make citizens arrests.

## C. Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action Under 42 U.S.C. § 1981 Should Be Denied

Defendant argues that Plaintiffs have failed to state a claim under 42 U.S.C. § 1981 because the wrongful conduct occurred after the consummation of a transaction. While Plaintiffs agree with Defendant's limited analysis, the right to make and enforce contracts is not the only right protected by the statute. Specifically, 42 U.S.C. § 1981 provides,

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the *full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens*, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(emphasis added).

The very case cited by Defendant unequivocally demonstrates that Plaintiff's Claim under 42 U.S.C. § 1981 should not be dismissed. *Drayton v. Toys R' Us*, 645 F. Supp. 2d 149, 151 (S.D.N.Y. 2009) (cited by Defendant) is a case wherein the plaintiffs alleged violations of § 1981 on the grounds that Toys R' Us checked the receipts of Black customers after purchases were made. The Court held that "[a]n equal benefit claim

under Section 1981 requires proof that [i] the plaintiff is a member of a racial minority, [ii] the defendants intended to discriminate on the basis of race, and [iii] the discrimination concerns one of the statute's enumerated activities." *Id.* at 161 (internal citations omitted). Further, such claims under § 1981 "require[] a nexus to state proceedings or laws, even though state action is not required." *Id.* (internal citations omitted.). And "[t]here must be some evidence of purposeful and systematic discrimination in the form of specific instances when members of a recognized group were singled out for unlawful oppression in contrast to others similarly situated." *Id.* (internal citations omitted). The Court went on to find that a reasonable jury could conclude that by checking receipts of Black customers, Toys R' Us "intentionally discriminated against [the plaintiffs] on the basis of their race." *Id.* Additionally, the Court found that "[m]aterial issues of fact also exist regarding whether Defendants' alleged discrimination concerns one of Section 1981's enumerated activities, *i.e.*, the full and equal benefit of all laws and proceedings for the security of persons and property." *Id.* (internal citations omitted). This conclusion was based on the fact that the plaintiffs had alleged that Toys R' Us' "racially discriminatory conduct deprived them of the full and equal benefit of New York State Executive Law § 296, a state civil rights law which protects the security of persons and property …, [and amounted to] racial discrimination in places of public accommodation." *Id.* (internal citations omitted). In the end, the Court held that the plaintiffs' § 1981 claims survived summary judgment because there were material issues of fact as to whether the defendant's receipt checking policy violated New York Executive law § 296, "which prohibits racial discrimination in places of public accommodation." *Id.* at 159.

New York Executive Law § 296 "deems it unlawful discrimination if a place of public accommodation denies its accommodations to any person on the basis of race, creed, national origin, sex, or disability or marital status." Similarly, California's Unruh Act (Plaintiffs' Fourth Cause of Action, against which Defendant does not move to dismiss) provides, "No business establishment of any kind whatsoever shall discriminate

against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51." Cal. Civ. Code § 51.5. Subdivision (b) includes race. *Id.* at § 51; *see also Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1148 (Cal. 1991) ("The Unruh Act prohibits denial of access to public accommodations based on specified classifications (i.e., race, sex, religion and others).").

Plaintiffs' Fourth Cause of Action states that in violation of the Unruh Act, "Defendant Magee, acting at all times within the scope of her employment at Nike, refused to provide equal access to Nike's products and services on account of Plaintiffs' race by following, harassing, defaming, accosting, assaulting, and accusing them of stealing a duly purchased basketball." Compl. ¶ 140. Defendants do not move to dismiss Plaintiffs' Unruh Act claims.

Accordingly, pursuant to the very case upon which Defendant relies, Plaintiffs' claims under § 1981 are adequately pled. Plaintiffs, like the plaintiffs in *Drayton* regarding New York Executive Law § 296, allege facts sufficient to show that Defendant Nike denied them full and equal benefit of the rights protected by the Unruh Act, in violation of 42 U.S.C. § 1981. Here, exactly like in *Drayton*, Defendant Nike denied Plaintiffs the full and equal benefit of state law by way of checking Plaintiffs' receipts on account of their race, not to mention detaining and assaulting Mr. Stallworth on account of the same. And like in *Drayton*, Plaintiffs allege that this denial was "purposeful and systematic" vis-à-vis specific allegations of Magee's past conduct singling out (and even searching) Black customers and employees on suspicion that they were stealing. Compl. ¶¶ 13-14. Lastly, to the extent that the Court finds that Plaintiffs' reference in the Complaint to the right to make and enforce contracts (Compl. ¶ 126) limits Plaintiffs' Complaint to that clause of § 1981, Plaintiffs will specifically reference the clause guaranteeing the "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens" if granted leave to amend their Complaint.

**D.     Defendant's Motion to Dismiss Plaintiffs' Tenth Cause of Action Under 42 U.S.C. § 1985 Should Be Denied**

To state a claim under 42 U.S.C. § 1985, a plaintiff must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971)). Defendants challenge (1) and (2).

While Defendant is correct that § 1985 creates no substantive rights, but rather creates a civil cause of action for conspiracy to deprive a plaintiff of his rights under some other law, Plaintiffs have adequately pled deprivations and resultant harms under 42 U.S.C. § 1981 and § 1983, including a conspiracy between Defendants and the SMPD. *See* Sections B and C, *supra*. Likewise, Plaintiffs have pled acts by the SMPD and Defendants in furtherance of the conspiracy, to wit, Magee's baseless accusation and Defendant SMPD's substation of Magee's judgment for their own by way of refusing to independently investigate her accusation. *See* Section B, *supra*; Compl. ¶¶ 10, 11, 78-88, 102, n. 28. Finally, as mentioned in Section B., *supra*, to the extent that the Court requires more detailed allegations of conspiracy, if permitted to amend their Complaint, Plaintiffs will allege that the detention in this case occurred pursuant to the SMPD's agreement with shopkeepers in and around the Third Street Promenade (specifically including Defendants Nike and Magee) whereby SMPD detains all individuals shopkeepers accuse of theft or against whom shopkeepers make citizens arrests.

**E.     Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action Under the Ralph Act (Cal. Civ. Code § 51.7) Should Be Denied**

As a preliminary matter, Plaintiffs agree that the Ralph Act claims of Ms. Dickerson and Minor SS should be dismissed. Plaintiffs do not agree, however, that the Mr. Stallworth's Ralph Act claim should be dismissed.

The Ralph Act provides that "[a]ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property … on account of any characteristic listed or defined in subdivision (b) or (e) of section 51." Cal. Civ. Code, § 51.7. Subdivision (b) includes race. *Id.* at § 51. "[T]here is no requirement that the violence be extreme or motivated by hate in the plain language of the sections, or in the cases construing them; there is also no requirement that the act constitute a crime." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1289 (9th Cir. 2001). "If the California legislature wanted to limit the reach of the statute to extreme, criminal acts of violence, it could have explicitly said so." *Id.* As Defendant notes, "[t]he test [for determining a violent act] is: "would a reasonable person, standing in the shoes of the plaintiff, have been intimidated by the actions of the defendant and have perceived a threat of violence?" *Id.* at 1289-90. As mentioned, violence does not need to be extreme. Indeed, the *Winarto* court held that a plaintiff being kicked "at least once" constituted a violation of the Ralph Act. *Id.* at 1289.

Defendant's only argument is that Mr. Stallworth's allegations of assault (and the evidence of battery) are somehow not serious enough to establish a Ralph Act Claim. Defendant is mistaken. Setting aside Defendant's attempt to incorporate by reference the "most complete copy of Plaintiffs' video that NIKE was able to locate online,"[1] Plaintiffs' Complaint alleges a series of events before and after any video was recorded which Plaintiffs did not capture on any recording device. *See* Compl. ¶ 74-75, 77-104. Included in that unrecorded series of events is Magee's initial interaction with Plaintiffs wherein, after accusing him of theft, Magee "lunged at Mr. Stallworth and attempted to snatch the ball from his hands, even touching the ball," and "[s]he continued to impede Mr. Stallworth's and SS's path and lunge at Mr. Stallworth." Compl. ¶ 78.

Not only are the allegations in Plaintiffs' Complaint sufficient to establish assault (as described *infra*), they are sufficient to establish battery. *See*, *e.g.*, *In re B.L.*, 239

---

[1] Plaintiffs file their Objection to Defendant's Incorporation of the NBC Link concurrently herewith.

1  Cal. App. 4th 1491, 1497-98 (2015) (finding that "knocking a walkie-talkie transmitter

2  out of the hand of the person holding it" amounts to battery under California law);

3  Restatement (Second) Torts § 18, comment *c* at 31 (1965) ("Unpermitted and

4  intentional contacts with anything so connected with the body as to be customarily

5  regarded as part of the other's person and therefore as partaking of its inviolability is

6  actionable as an offensive contact with his person.  There are some things such as

7  clothing or a cane or, indeed, *anything directly grasped by the hand* which are so

8  intimately connected with one's body as to be universally regarded as part of the

9  person.") (emphasis added). Indeed, "[i]t has long been established, both in tort and

10  criminal law, that 'the least touching' may constitute battery." *People v. Wright*, 100

11  Cal. App. 4th 703, 716 (2002) (internal citations omitted).

12       Defendant does not (and cannot) cite to any case finding that the conduct alleged

13  by Mr. Stallworth is not sufficient to establish a Ralph Act Claim. The case law makes

14  clear that the "violence" necessary to allege a Ralph Act claim is simply "the

15  *unreasonable* use of force," i.e., "any *wrongful* application of physical force." *See*

16  *Campbell v. Feld Entm't, Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014) (emphasis in

17  original) (in the context of a Ralph Act claim, drawing the line between wrongful and

18  tortious physical contact on the one hand, and no physical contact or reasonable or

19  consented-to physical contact on the other). There is no question that Magee's assault

20  and false imprisonment (and battery) against Mr. Stallworth were tortious, thus

21  amounting to unreasonable and wrongful force. Accordingly, Defendant's Motion to

22  Dismiss as to Plaintiffs' Ralph Act claim should be denied.

23  **F.    Defendant's Motion to Dismiss Plaintiffs' Fifth Cause of Action for Assault**

24  **Should Be Denied**

25       Defendant argues only that the facts alleged do not establish assault because "Mr.

26  Stallworth has not alleged any facts plausibly demonstrating that he was put in fear of

27  personal harm." Dkt. No. 19 at 23. This is without merit. Mr. Stallworth specifically

28  alleges that he "reasonably believed that he was about to be touched in a harmful or

offensive manner, and it reasonably appeared to him that Defendant Magee was about to carry out her threats." Compl. ¶ 145. Moreover, Mr. Stallworth alleges all other elements of an assault claim which were not argued by Defendant.

A civil action for assault is based upon an invasion of the right of a person to live without being put in fear of personal harm." *Lowry v. Standard Oil Co.*, 63 Cal.App.2d 1, 6-7. (1944). "The tort of assault is complete when the anticipation of harm occurs." *Kisesky v. Carpenters' Trust For So. California*, 144 Cal. App. 3d 222, 232 (1983). In California, assault requires that (1) the defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) the plaintiff did not consent to defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing plaintiff's harm. *So v. Shin*, 212 Cal. App. 4th 652, 668-669 (2013).

Mr. Stallworth alleges that Magee, intending to cause harmful or offensive contact, "lunged at Mr. Stallworth and attempted to snatch the ball from his hands, even touching the ball." Compl. ¶¶ 78, 144. He alleges that he "reasonably believed that he was about to be touched in a harmful or offensive manner, and it reasonably appeared to him that Defendant Magee was about to carry out her threats." Compl. ¶ 145. And he alleges that he did not consent, was harmed, and Magee's conduct was a substantial factor in causing said harm. Compl. ¶¶ 145-147. These are sufficient allegations of assault (and, for that matter, battery). *See*, *e.g.*, *Pignatelli v. Delta Airlines*, Inc., 2005 Cal. App. Unpub. LEXIS 3731, *17, 2005 WL 957940 (Cal. App. 2d. 2005) (holding that assault and battery claims survived summary judgment where the defendant intended to touch and actually touched an identification badge worn by the plaintiff).

## G.   Defendant's Motion to Dismiss Plaintiffs' Sixth Cause of Action for IIED Should Be Denied

Defendant argues that Plaintiffs' Complaint fails to "[To] state a cause of action

1   for intentional infliction of emotional distress the plaintiff is required to show severe

2   emotional distress resulting from outrageous conduct on the part of the defendant."

3   *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 394 396-397 (1970).

4   Severe emotional distress means "emotional distress of such substantial quantity or

5   enduring quality that no reasonable man in a civilized society should be expected to

6   endure it." *Id.* While Plaintiffs agree that pursuant to Cal. Civ. Code § 47(b) Defendant

7   Nike cannot be held liable for emotional distress caused solely by the police, Plaintiffs

8   nevertheless allege a series of actions carried out by Magee herself that properly form the

9   basis for the IIED claim.

10      Assault, i.e., the threat of physical harm coupled with racial slurs have been held

11   sufficient to establish IIED. *Jackson v. Local 705, Int'l Bhd. of Teamsters*, 2002 U.S.

12   Dist. LEXIS 4908, *54 (N.D. Ill. 2002). And a particular Plaintiff's sensitivity to racial

13   harm is highly relevant to a determination of outrageousness. *Id.* There is little, if any,

14   experiential distinction between being called a criminal (or watching your husband or

15   father be called a criminal) because of the color of your or his skin, on the one hand, and

16   being called a racial epithet, on the other.

17      Here, Plaintiffs allege that Magee, who had a history of degrading and anti-Black

18   discriminatory behavior, made defamatory racially-motivated accusations against

19   Plaintiffs in front of their friends on a crowded promenade. Compl. ¶¶ 13, 78-84, 86, 88,

20   92 Additionally, Plaintiffs allege that Magee assaulted and falsely imprisoned Mr.

21   Stallworth. Compl. ¶¶ 78-79. All of these facts, alongside the particular sensitivity of this

22   family to racial harm, particularly racial harm exacted upon them by Nike, support a

23   finding of outrageousness. Compl. ¶ 25-73; *Jackson*, 2002 U.S. Dist. LEXIS 4908 at *54

24   ("Other factors weighing in favor of outrageousness here also include … Jackson's

25   special sensitivity to racial threats as an older black man. … Jackson's evidence goes

26   well beyond mere insults, indignities, threats, annoyances, petty oppressions, or other

27   trivialities."). Defendant does not address any of these facts in its motion to dismiss and

28   they militate heavily in favor of maintaining Plaintiffs' IIED claim at this early stage.

1  Accordingly, Defendant Nike's Motion to Dismiss Plaintiff's sixth cause of action for

2  IIED is due to be denied.

3  **H.  Defendant's Motion to Dismiss Plaintiffs' Seventh Cause of Action for**

4  **Slander Should Be Denied**

5      Defendant argues that Plaintiff's Seventh Cause of Action for slander should be

6  denied because "the Complaint does not allege that any of the alleged strangers nearby

7  had any idea who Mr. Stallworth was." Dkt. No. 19 at 26. Defendant's argument fails

8  because Defendant does not address the presence of Plaintiffs' close friends Rebecca and

9  Khalil during the entirety of the incident.

10     Pursuant to Cal Civ Code § 46, "Slander is a false and unprivileged publication,

11 orally uttered … which[] [c]harges any person with a crime." Plaintiffs agree that

12 Magee's false accusation to the police is privileged pursuant to Cal. Civ. Code § 47(b),

13 and Plaintiffs agree that a slanderous utterance "must be communicated to a third party

14 who understands the defamatory meaning and its applicability to the plaintiff." *Neary v.*

15 *Regents of Univ. of Cal.*, 185 Cal. App. 3d 1136, 1147 (1986). Neither of these points

16 alter the merits of Mr. Stallworth's allegations because though the onlookers may not

17 have known his name, Plaintiffs' friends Rebecca and Khalil, who were also present, did.

18     In the Complaint, Plaintiffs allege that during the entirety of the incident they were

19 accompanied by their friends Rebecca and Khalil. Compl. ¶¶ 74, 90, 92, 93. Rebecca and

20 Khalil were present for all of Magee's defamatory statements, alongside dozens of

21 onlookers. Compl. ¶ 78. Defendant does not contest that Rebecca and Khalil know Joel

22 and TaMiya. The statements made by Magee were not part or parcel to any

23 communication with police nor were they shouted into a void. Instead, they were made

24 about Mr. Stallworth in front of his close friends and dozens of others. Thus, Magee's

25 accusations amount to "charg[ing] any person with a crime" pursuant to Cal Civ Code §

26 46 and they are not privileged under Cal. Civ. Code § 47(b). *See DeTomaso v. Pan*

27 *American World Airways, Inc.*, 218 Cal. Rptr. 746, 754, 1985 Cal. App. LEXIS 2593,

28 *22, 172 Cal. App. 3d 1170 (1985) (approving of a jury's finding of defamation where a

1  security guard accused a man of theft in front of his son). Accordingly, Defendant's

2  Motion to Dismiss Plaintiff's Seventh Cause of Action for slander is due to be denied.

3  **I.    Defendant's Motion to Dismiss Plaintiffs' Eighth Cause of Action for**

4  **Negligent Supervision and Retention Should Be Denied**

5         Plaintiffs have very clearly stated a claim of negligent supervision and retention.

6  "An employer may be liable to a third person for the employer's negligence in hiring or

7  retaining an employee who is incompetent or unfit." *Roman Catholic Bishop v.*

8  *Superior Court*, 42 Cal.App.4th 1556 (1996). Negligence liability will be imposed upon

9  the employer if it "knew or should have known that hiring [or retaining] the employee

10 created a particular risk or hazard and that particular harm materializes." *Doe v. Capital*

11 *Cities*, 50 Cal.App.4th 1038, 1054 (1996). As such, California follows the rule set forth

12 in the Restatement Second of Agency section 213, which provides in pertinent part: "A

13 person conducting an activity through servants or other agents is subject to liability for

14 harm resulting from his conduct if he is negligent or reckless: … [¶] (b) in the

15 employment of improper persons or instrumentalities in work involving risk of harm to

16 others[.]" *Ibid.*; *Evan F. v. Hughson United Methodist Church* 8 Cal.App.4th 828, 836

17 (1992). Liability for negligent supervision and/or retention of an employee is one of

18 direct liability for negligence, not vicarious liability. 2 Dobbs, The Law of Torts, § 333,

19 p. 906.

20        Defendants cannot honestly argue that Plaintiff does not plead Nike's knowledge

21 of Magee's long string of documented racist behavior. Specifically, at paragraph 13 of

22 the Complaint, Plaintiffs allege:

23        Magee has a history of degrading and racist behavior while working at

24        Nike. She persistently racially profiled employees and customers of color,

25        even ordering employees to stalk NBA champion power forward Tristan

26        Thompson as he browsed apparel. Magee was known for using racial code

27        language, frequently radioing "Keep an eye on the VIP customers" to refer

28        to Black customers whom she wanted her employees to follow around the

store. Even more degrading, Magee conducted searches of Black employees at the ends of their shifts in which she required them to remove their outerwear and turn it inside out. She also questioned Black employees' financial capacity to purchase Nike products, even with their employee discounts, and refused to allow Black employees to purchase items unless she herself processed their transactions.  Nike's widely-maligned "anonymous" employee reporting hotline likely contributed to the suppression of some employee voices, but not all. Remarkably, multiple employees were brave enough to call the hotline and specifically complain about Magee's racist behavior as early as 2017. Moreover, an African American employee who assisted in processing Mr. Stallworth's return of the basketball after the subject incident specifically told Ms. Dickerson and Rebecca, "She does this all the time. She has done it multiple times today. As a Black man, I know what it feels like."

Compl. ¶ 13. Thus, only do Plaintiffs specifically allege numerous prior incidents of racist treatment of customers and employees by Magee; they also allege that prior to the incident that forms the basis for this lawsuit, multiple Nike employees reported Magee's racist behavior to human resources vis-à-vis Nike's employee reporting hotline. Compl. ¶¶ 13, 14 and n. 6, 7; *see*, *e.g.*, *Veronica Fair v. Terrible Herbst, Inc.*, 2007 U.S. Dist. LEXIS 29542, *19-20, 23 (D. Nev. 2007) (granting summary judgment on negligent retention claim because the plaintiff *did not* call the complaint reporting hotline). Accordingly, Defendant's Motion to Dismiss Plaintiff's Eighth Cause of Action for Negligent Supervision and Retention is due to be denied.

## J.    Defendant's Motion to Dismiss Plaintiffs' Ninth Cause of Action for False Imprisonment Should Be Denied

As a preliminary matter, Plaintiffs agree that Mr. Stallworth's detention by SMPD officers is not actionable against Nike. Nevertheless, Mr. Stallworth states a claim for false imprisonment on the grounds of Magee's initial detention of him.

1    "False imprisonment is the unlawful violation of the personal liberty of another."

2    *Collins v. County of Los Angeles*, 241 Cal.App.2d 451, 459 (1966). The "[d]efinition of

3    the crime and the tort are the same." *Id.* "The tort requires some restraint of the person

4    and that he be deprived of his liberty or compelled to remain where he does not wish to

5    remain, or go where he does not wish to go and that the person be restrained of his liberty

6    without sufficient complaint or authority." *Id.* at 459-460.

7    After accosting Mr. Stallworth and SS, Magee blocked their path on the

8    promenade, separating them from Ms. Dickerson. Compl. ¶¶ 78, 79. Moreover, even

9    after Mr. Stallworth told her "I bought this. Leave us alone," she remained firmly

10   planted, keeping Mr. Stallworth and SS from continuing along their path toward Ms.

11   Dickerson. *Id.* Second, Magee lied to SMPD officers, telling them that Mr. Stallworth

12   had stolen the ball, which resulted in his detention. Compl. ¶¶ 81-87.

13   Defendant argues that only if Mr. Stallworth had been confined to a "back room"

14   or similar space would his claim survive. *See* Dkt. No. 19 at 30. This is simply not true,

15   rather, according to the very sentence Defendants cite from *Collins v. County of Los*

16   *Angeles*, 241 Cal.App.2d 451, 459–460 (1966), false imprisonment requires only "some

17   restraint of the person and that he be deprived of his liberty or compelled to remain

18   where he does not wish to remain." (emphasis added). By running up to Mr. Stallworth

19   and intentionally blocking his path, accusing him of theft, and attempting to take the

20   basketball from his hands, Magee very clearly "deprived him of his liberty and

21   compelled him to remain where he [did] not wish to remain." *Id.* Defendant appears to

22   read facts into the Complaint that are not there, to wit, that Mr. Stallworth "had ample

23   ability to choose a different path." Dkt. No. 19 at 23-24. As described above, Mr.

24   Stallworth clearly did not feel free to leave, nor would any reasonable person under

25   such circumstances where a store manager blocked their path, accused them of theft,

26   and lunged at them. Indeed, Mr. Stallworth specifically asked Magee to leave him

27   alone, but Magee stood her ground, and Mr. Stallworth did not move until Magee ran to

28   the police. Compl. ¶¶ 78, 79. Accordingly, Defendant's Motion to Dismiss Plaintiffs'

1  Ninth Cause of Action is due to be denied.

2  **IV.   CONCLUSION**

3        For the foregoing reasons, the Court should Deny Defendant's Motion to Dismiss

4  Plaintiffs' First (42 U.S.C. § 1983), Second (42 U.S.C. § 1981), Third (Ralph Act—Cal.

5  Civ. Code § 51.7), Fifth (Assault), Sixth (Intentional Infliction of Emotional Distress

6  ["IIED"]), Seventh (Slander), Eighth (Negligent Supervision and Retention), Ninth (False

7  Imprisonment), and Tenth (42 U.S.C. § 1985) Causes of Action. Additionally, to the

8  extent that the Court finds additional allegations necessary as described by Plaintiffs

9  herein, Plaintiffs request that Plaintiffs be granted leave to amend the Complaint as to

10  Plaintiffs' First, Second, Third, and Tenth Causes of Action.

11

12  Dated: October 26, 2020            Respectfully Submitted,

13                             HADSELL STORMER RENICK & DAI LLP

14

15                             By   /s/ - David Clay Washington

16                                  Dan Stormer

17                                  David Clay Washington
                          Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28