Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Kevin S. Asfour (SBN 228993)
kevin.asfour@klgates.com
Trevor J. Wynn (SBN 327623)
trevor.wynn@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendants
NIKE RETAIL SERVICES, INC. and
NIKE, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL STALLWORTH, TAMIYA DICKERSON, and Minor Plaintiff S.S., <br><br> Plaintiffs, <br><br> v. <br><br> NIKE RETAIL SERVICES, INC., WENDY MAGEE, NIKE, INC. and DOES 2-10, <br><br> Defendants. | Case No. 2:20-cv-05985-VAP-GJS <br><br> [Assigned to The Honorable Virginia A. Phillips] <br><br> **DEFENDANTS NIKE RETAIL SERVICES, INC.'S AND NIKE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> ***Filed concurrently herewith:*** <br> 1) **Statement of Undisputed Material Facts** <br> 2) **Compendium of Evidence (including Declarations of Paul W. Sweeney, Jr., Shelby Bird and Semaj Harbin)** <br> 3) **Notice of Lodging** <br> 4) **[Proposed] Order** <br><br> **DATE: NOVEMBER 1, 2021** <br> **TIME: 2:00 P.M.** <br> **COURTROOM: 8A** <br><br> Complaint filed: July 4, 2020 |

505086768.17

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 1, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 8A of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendants NIKE Retail Services, Inc. ("NIKE Retail") and NIKE, Inc. ("NIKE Parent") (collectively, "NIKE")[1] will, and hereby do, move the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment in their favor and against Plaintiffs Joel Stallworth, TaMiya Dickerson, and their minor son S.S. ("Plaintiffs") on the grounds that there is no genuine issue of material fact and NIKE is entitled to summary judgment as a matter of law.

**PLEASE TAKE FURTHER NOTICE** that, in the alternative, if the Court does not grant summary judgment as to the entire action, NIKE will and hereby does move the Court for partial summary judgment on the grounds that there is no genuine issue of material fact and NIKE is entitled to summary judgment as a matter of law on the following issues:

1)  There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the first cause of action in the Third Amended Complaint ("TAC"), for violation of 28 U.S.C. § 1983.

2)  There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the second cause of action in the TAC, for violation of 28 U.S.C. § 1981.

---

[1] In their operative pleading, the Third Amended Complaint ("TAC"), Plaintiffs have asserted each of their causes of action against both NIKE Retail and NIKE Parent. The legal and evidentiary obstacles to Plaintiffs' claims presented in this motion warrant summary judgment as to both defendants, and thus for the sake of simplicity NIKE Parent and NIKE Retail (which is a subsidiary of NIKE Parent) are frequently referred to herein simply as "NIKE." NIKE Parent reserves all rights regarding additional defenses and obstacles to Plaintiffs' claims (not raised in this motion) relating to the fact that the two corporations are separate legal entities and that NIKE Retail (rather than NIKE Parent) was the operator of the subject retail store and the employer of Defendant Wendy Magee.

3)      There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the third cause of action in the TAC, for violation of 28 U.S.C. § 1985.

4)      There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the fourth cause of action in the TAC, for violation of the Unruh Act (Cal. Civ. Code § 51.5).

5)      There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the fifth cause of action in the TAC, for violation of the Ralph Act (Cal. Civ. Code § 51.7).

6)      There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the sixth cause of action in the TAC, for assault.

7)      There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the seventh cause of action in the TAC, for intentional infliction of emotional distress.

8)      There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the eighth cause of action in the TAC, for Slander.

9)      There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the ninth cause of action in the TAC, for False Imprisonment.

10)    There are no genuine issues of material fact, and NIKE is entitled to partial summary judgment as a matter of law, as to the tenth cause of action in the TAC, for negligent supervision and retention.

**PLEASE TAKE FURTHER NOTICE** that, in light of the Court holiday on October 11, 2021, and consistent with NIKE's prior written representations to

1  Plaintiffs, NIKE hereby affirms that it has no objection to Plaintiffs' filing any
2  opposition to this motion on October 12, 2021.

3       This motion is made following the conference of counsel pursuant to Local
4  Rule 7-3 which took place on September 24, 2021.

5       This motion is based upon this Notice of Motion, the Memorandum of Points
6  and Authorities attached hereto, the Statement of Undisputed Facts ("SUF") filed
7  concurrently herewith, the Compendium of Evidence filed concurrently herewith
8  (including Declarations of Paul W. Sweeney, Jr., Shelby Bird and Semaj Harbin), the
9  Notice of Lodging filed concurrently herewith, the complete Court files and records in
10 this action, and all matters that may be properly considered by the Court at the hearing
11 on this Motion.

12
13                                        K&L GATES LLP

14  Dated:  October 4, 2021          By:  /s/ Kevin S. Asfour
                                         Paul W. Sweeney, Jr.
15                                       Kevin S. Asfour
                                         Trevor J. Wynn
16
                                         Attorneys for Defendants
17                                       NIKE RETAIL SERVICES, INC. and
                                         NIKE, INC.
18
19
20
21
22
23
24
25
26
27
28

**NIKE'S MOTION FOR SUMMARY JUDGMENT**
505086768.17

# **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................1

II.     SUMMARY OF UNDISPUTED FACTS.......................................................4

III.    JUDICIAL STANDARD ..............................................................................8

IV.     PLAINTIFFS' FEDERAL CLAIMS HAVE NO LEGAL MERIT...............8

     A.      Plaintiffs Cannot Support Their 42 U.S.C. § 1983 Claim ..................8

         1.      Defendant Magee Did Not Act Under the Color of Law ..........9

         2.      Plaintiffs Were Not Deprived of a Federal Right ...................11

     B.      Mr. Stallworth Cannot Support His 42 U.S.C. § 1981 Claim............12

     C.      Plaintiffs Cannot Support Their 42 U.S.C. § 1985 Claim .................14

V.      PLAINTIFFS' STATE LAW CLAIMS HAVE NO LEGAL MERIT ........15

     A.      Statutory Privileges Bar Plaintiffs' State-Law Claims .....................15

         1.      California's Merchant's Privilege Bars Plaintiffs' Claims......16

         2.      Section 47(b) Bars All of Plaintiffs' Claims to the Extent
                They Rely On Magee's Complaint to SMPD or Any
                Subsequent SMPD Conduct .....................................................17

     B.      Plaintiffs Cannot Support Their Unruh Act Claim ...........................18

     C.      Mr. Stallworth Cannot Support His Ralph Act Claim ......................19

     D.      Mr. Stallworth Cannot Support His Assault Claim ..........................20

     E.      Plaintiffs Cannot Support Their IIED Claim ....................................20

     F.      Mr. Stallworth Cannot Support His Slander Claim ..........................21

     G.      Mr. Stallworth Cannot Support His False Imprisonment Claim .......22

     H.      Plaintiffs Cannot Support Their Negligent Supervision Claim ........23

     I.      Plaintiffs Cannot Recover Punitive Damages Against NIKE............24

**NIKE'S MOTION FOR SUMMARY JUDGMENT**

505086768.17

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Adams v. Williams*,
  407 U.S. 143 (1972) ................................................................. 12

*Alcala v. Best Buy Stores, LP*,
  No. 11-0798, 2012 WL 6138332 (C.D. Cal. Nov. 7, 2012) ................. 19

*Alcorn v. Anbro Eng'g Inc.*,
  2 Cal. 3d 493 (1970) ................................................................ 21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................. 8

*Astre v. McQuaid*,
  804 Fed. Appx. 665 (9th Cir. 2020) ............................................ 13

*Campbell v. Feld Entertainment*,
  75 F. Supp. 3d 1193 (N.D. Cal. 2014) ......................................... 20

*Casillas v. Home Depot USA, Inc.*,
  No. 18-6325, 2018 WL 6431007 (C.D. Cal. Sept. 20, 2018) ............... 23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................. 8

*Cochran v. Cochran*,
  65 Cal. App. 4th 488 (1998) ...................................................... 21

*College Hospital, Inc. v. Superior Court*,
  8 Cal. 4th 704 (1994) ............................................................... 25

*Collins v. County of Los Angeles*,
  241 Cal. App. 2d 451 (1966) ...................................................... 23

*Collins v. Hardyman*,
  341 U.S. 651 (1951) ................................................................. 15

*Collyer v. S.H. Kress Co.*,
  5 Cal. 2d 175 (1936) ................................................................ 16

*Comcast Corp. v. NAAAOM*,
  140 S. Ct. 1009 (2020) ......................................................... 13, 14

*Copeland v. K Mart Corp.*,
  161 F.3d 12 (9th Cir. 1998) ............................................... 9, 10, 11

*Cox v. Griffin*,
  34 Cal. App. 5th 440 (2019) .................................................. 17, 22

*Cruz v. Donnelly*,
  727 F.2d 79 (3d Cir. 1984) ............................................... 9, 10, 11

*Dang v. Cross*,
  422 F.3d 800 (9th Cir. 2005) ..................................................... 25

*DC Comics v. Pac. Pictures Corp.*,
  938 F. Supp. 2d 941 (C.D. Cal. 2013) ........................................... 8

*Dewalt Prods., Inc. v. City of Portland*,
  829 Fed. Appx. 226 (9th Cir. 2020) ............................................ 14

*Dietrich v. John Ascuaga's Nugget*,
  548 F.3d 892 (9th Cir. 2008) ..................................................... 11

*Evangelatos v. Superior Court*,
  44 Cal. 3d 1188 (1988) ............................................................. 17

*Federico v. Superior Court*,
  59 Cal. App. 4th 1207 (1997) .................................................... 23

*Fermino v. Fedco, Inc.*,
  7 Cal. 4th 701 (1994) ............................................................... 16

*Fowler v. Varian Assocs.*,
  196 Cal. App. 3d 34 (1987) ....................................................... 21

v

*Gen. Bldg. Contractors Ass'n, Inc. v. Pa.*,
   458 U.S. 375 (1982) ................................................................................ 13

*Gramenos v. Jewel Companies, Inc.*,
   797 F.2d 432 (7th Cir. 1986) ............................................................... 9, 11

*Grant v. Starbucks Corp.*,
   No. 18-8927, 2019 WL 8112465 (C.D. Cal. Sep. 24, 2019) .................... 18

*Great Am. Fed. S&L Assn. v. Novotny*,
   442 U.S. 366 (1979) ................................................................................ 15

*Griffin v. Breckenridge*,
   403 U.S. 88 (1971) .................................................................................. 15

*Guz v. Bechtel Nat. Inc.*,
   24 Cal. 4th 317 (2000) ............................................................................ 19

*Hagberg v. Calif. Fed. Bank*,
   32 Cal. 4th 350 (2004) ................................................................ 17, 21, 22

*Hicks v. KNTV Television, Inc.*,
   160 Cal. App. 4th 994 (2008) ................................................................. 19

*Homestead Sav. v. Darmiento*,
   230 Cal. App. 3d 424, 431 (1991) .......................................................... 13

*Howard v. Topeka-Shawnee Cty.*,
   578 F.Supp. 534 (D. Kan. 1983) ............................................................ 15

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009) .......................................................................... 20

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ................................................................... 25

*In re O.P.*,
   No. F044633, 2004 WL 2713941 (Cal. Ct. App. Nov. 30, 2004) ..... 17, 22

*INS v. Delgado*,
   466 U.S. 210 (1984) ................................................................................ 12

*Jackson v. AEG Live, LLC*,
   233 Cal. App. 4th 1156 (2015) ......................................................... 23, 24

*Jenkins v. MCI Telecom. Corp.*,
   973 F. Supp. 1133 (C.D. Cal. 1997) ...................................................... 19

*Kesmodel v. Rand*,
   119 Cal. App. 4th 1128 (2004) ............................................................... 22

*Kidd v. Marshalls of Calif., LLC*,
   2012 WL 833027 (C.D. Cal. Jan. 17, 2012) .......................................... 11

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003) ......................................... 9

*Lauter v. Anoufrieva*,
   642 F. Supp. 2d 1060 (C.D. Cal. 2009) ................................................. 17

*Le Bourgeois v. Fireplace Mfrs., Inc.*,
   68 Cal. App. 4th 1049 (1998) ................................................................. 19

*Mackey v. Bd. of Trustees of Calif. State Univ.*,
   31 Cal. App. 5th 640 (2019) ................................................................... 18

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ................................................................................ 18

*Mulder v. Pilot Air*,
   32 Cal. 4th 384 (2004) ................................................................ 17, 21, 22

*Navarette v. California*,
   572 U.S. 393 (2014) ................................................................................ 12

*Neary v. Regents of Univ. of California*,
   185 Cal. App. 3d 1136 (1986) ................................................................ 22

*Onokohwomo v. Sterling Jewelers, Inc.*,
   No. 20-0261, 2021 WL 1245360 (C.D. Cal. Mar. 3, 2021) .................... 19

*People v. Sahagun*,
   89 Cal. App. 3d 1 (1979) ........................................................................ 13

vi

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982) ................................................................................. 9

*Rodriguez v. Contra Costa Cty.*,
   2013 WL 5946112 (N.D. Cal. Nov. 5, 2013) ........................................ 20

*Sheridan v. Target Corp.*,
   No. 10-0055, 2011 WL 13224879 (C.D. Cal. Jan. 10, 2011) ........ 16, 20, 21, 22

*Sialoi v. City of San Diego*,
   823 F.3d 1223 (9th Cir. 2016) ................................................................ 11

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990) ............................................................................ 17

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) ............................................................................... 18

*Sutton v. Providence St. Joseph Med. Ctr.*,
   192 F.3d 826 (9th Cir. 1999) .................................................................. 9

*Talaie v. Wells Fargo Bank, N.A.*,
   808 F.3d 410 (9th Cir. 2015) .................................................................. 17

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007) ........................................................................... 21

*Terry v. Ohio*,
   392 U.S. 1 (1968) ................................................................................... 12

*United States v. Cortez*,
   449 U.S. 411 (1981) ............................................................................... 12

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   865 F.2d 1539 (9th Cir. 1989) ................................................................ 9

*Villegas v. Duck*,
   242 F.3d 385 (9th Cir. 2000) .................................................................. 15

*Z.V. v. County of Riverside*,
   238 Cal. App. 4th 889 (2015) ................................................................ 24

## Statutes

42 U.S.C. § 1981 ........................................................................................ 2, 12
42 U.S.C. § 1983 ......................................................................................... 2, 8
42 U.S.C. § 1985 ......................................................................................... 2, 14
Cal. Civ. Code § 3 ......................................................................................... 17
Cal. Civ. Code § 3294 ................................................................................... 25
Cal. Civ. Code § 47 ................................................................................. 21, 22, 24
Cal. Civ. Code § 51.5 .............................................................................. ii, 12, 18
Cal. Civ. Code § 51.7 .................................................................................. ii, 19
Cal. Pen. Code § 490.5 .............................................................................. passim

## Other Authorities

CACI 1400 .................................................................................................. 23
CACI 3060 .................................................................................................. 18

## Rules

Fed. R. Civ. P. 56 ......................................................................................... 8

**NIKE'S MOTION FOR SUMMARY JUDGMENT**

505086768.17

## Constitutional Provisions

Cal. Const., art. IV, section 8 .......................................................................... 17

505086768.17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case is about an incident that occurred over the span of about 20 minutes. There are no genuine disputes of material fact, and unlike in many cases, the causation of the incident need not be inferred—it is clear from the evidence what happened. Most of the events are captured by audio and video recordings from multiple sources, leaving no question as to what happened.  And as to the brief portion that was not recorded, deposition testimony and contemporaneous written statements clearly establish what transpired in all material respects.

Plaintiffs' claims all arise from their visit to NIKE Retail's store located on the Third Street Promenade in Santa Monica (the "Store") on July 5, 2019.  After they exited the store, Plaintiffs were stopped by Store Manager Wendy Magee ("Magee") who asked Plaintiffs for a receipt for a mini-basketball they had with them when they exited.  In short, Plaintiffs assert that Magee did this because they are African American, and they claim various federal civil rights and state law violations, hoping that one will stick.  The undisputed facts, however, demonstrate why Magee acted. She acted on the report of another employee.  **Magee was not the person who (mistakenly) identified Plaintiffs as having failed to pay for the ball.**

It is undisputed that the employee who mistakenly reported that Plaintiffs had not paid for ball was Semaj Harbin, who is African American.  Mr. Harbin had not seen Plaintiffs purchase the ball from another NIKE employee and was unaware that they had paid.  Mr. Harbin, however, did observe one of Plaintiffs playing with various basketballs and eventually the father, Mr. Stallworth, swapped the ball that he was originally holding for a similar ball of a different color that Mr. Harbin had been holding.  Mr. Harbin thereafter observed Plaintiffs as they exited the Store. Mistakenly thinking that Plaintiffs had not paid, Mr. Harbin radioed his belief to the other employees.

Because it was already past closing time, Defendant Wendy Magee, the Store's

1

1    manager, had been standing at the front door on the first floor to let consumers exit
2    and to ensure that no new consumers entered.  As the various consumers who were
3    still in the Store approached the exit, Ms. Magee dutifully opened the door to allow
4    them to leave, no questions asked.  These included consumers of different races,
5    including African Americans—and including Plaintiffs themselves.

6        As Plaintiffs were exiting the Store, Ms. Magee heard Mr. Harbin's radio report
7    that Plaintiffs had not paid for the ball.  She responded on the radio by repeatedly
8    inquiring of all employees whether any had seen or processed Plaintiffs' purchase, and
9    all their replies stated that none had.  Ms. Magee, acting on the report of Mr. Harbin
10    and her other employees, then exited the Store about 30 seconds after Plaintiffs left to
11    catch up to Mr. Stallworth.  She asked Plaintiffs for the ball, if they could not show a
12    receipt.  They refused to show a receipt.

13        Ms. Magee saw police officers standing nearby and asked them for assistance.
14    One of the officers then approached Mr. Stallworth and questioned him about the ball.
15    Within about 30 seconds, Mr. Stallworth pulled the receipt out of his pocket, and then
16    threw it to the ground.  The officer picked up the receipt and looked at it, which
17    showed that the ball had been paid for, effectively resolving the issue.  Plaintiffs then
18    shouted at the officers and Ms. Magee for several minutes, using profanity and calling
19    Ms. Magee names.  Ultimately Plaintiffs stated that they did not want the ball any
20    longer, and took the ball back to the Store and obtained an immediate refund.

21        On the basis of these events, Plaintiffs allege causes of action under federal
22    civil rights statutes (*i.e.*, 42 U.S.C. §§ 1981, 1983 and 1985), as well as various state
23    law tort claims.  The undisputed material facts, however, preclude all of their claims.

24        Regarding Plaintiffs' federal causes of action: a claim under Section 1983 can
25    generally only be asserted against state actors, not private-party defendants.  Although
26    there is a narrow exception to this rule where the plaintiff can demonstrate a pre-
27    arranged agreement between a private party and the state to violate the plaintiff's
28    constitutional rights, there is absolutely no evidence of any "conspiracy agreement"

2

**NIKE'S MOTION FOR SUMMARY JUDGMENT**

here.  Moreover, the evidence does not demonstrate a deprivation of any of Plaintiffs' constitutional rights, anyhow, further barring their Section 1983 claim.  Plaintiffs' Section 1985 claim likewise requires both evidence of a conspiracy and an underlying deprivation of their federal rights, but again, the evidence here precludes the claim on both fronts.  Plaintiffs' Section 1981 claim fares no better: it requires, *inter alia*, a showing that the "but for" cause of Magee's conduct was Plaintiffs' race, but the evidence here and summarized above belies any such notion.

Turning to Plaintiffs' state law causes of action, two separate statutory privileges bar all of them.  Each of the claims is based on Plaintiffs' allegation that they suffered harm as a result of (i) Ms. Magee's conduct in leaving the Store in an attempt to retrieve the ball and asking for a proof of purchase, which Plaintiffs refused to show, and then (ii) Ms. Magee's seeking the assistance of nearby police officers and the officers' subsequent brief questioning of Plaintiffs.

First, California's statutory merchant's privilege (Cal. Pen. Code § 490.5(f)) expressly authorizes a merchant to "detain a person for a reasonable time for the purpose of conducting an investigation" under facts such as were present here, and immunizes such conduct from liability "in any civil action."  Accordingly, Plaintiffs cannot base any of their claims on Ms. Magee's very brief, purely verbal interaction with Plaintiffs, wherein she inquired about the ball and asked for a receipt.

Second, to the extent Plaintiffs attempt to base their claims on Ms. Magee's complaint to the police and/or the subsequent conduct of the police (who are not named as defendants), the claims are likewise barred by statutory privilege.  The California Supreme Court has repeatedly held that Section 47(b) of the California Civil Code bars any and all causes of action based upon a defendant's reporting to the police—with the sole exception of a malicious prosecution cause of action (which Plaintiffs have not even pleaded, nor can they).

For these reasons, alone, the Court should grant summary judgment as to all of Plaintiffs' claims.  Moreover, as detailed herein, even apart from the bright-line

**NIKE'S MOTION FOR SUMMARY JUDGMENT**

statutory privileges that bar Plaintiffs' claims, summary judgment in favor of Defendants is appropriate for the additional reason that Plaintiffs cannot demonstrate a triable issue of fact as to one or more elements of each claim.

## II.   **SUMMARY OF UNDISPUTED FACTS**

On the evening of July 5, 2019, Plaintiffs entered the Store, sometime after 8:00 p.m. (SUF No. 7.)  The Store was scheduled to close at 9:00 p.m. (SUF No. 8.) Plaintiffs browsed the Store and, after perusing the mini basketballs located on the second floor, selected one. (SUF Nos. 9, 10.)  At 9:01 p.m., Mr. Stallworth used his credit card to purchase the ball from one of the sales associates ("Athletes") on the second floor, Daniel Gampe. (SUF No. 10.)  Mr. Gampe used a hand-held mobile device to process the purchase, *i.e.*, the purchase was not made on the first floor where the cash registers were located and where Defendant Magee was working. (*See* SUF Nos. 11, 12.)  Plaintiffs did not ask for or receive a store bag in which to carry the purchased ball. (SUF No. 13.)  As his shift was scheduled to end at 9:00 p.m., Mr. Gampe stopped working immediately after he processed the purchase, and he clocked out at 9:03 p.m. (two minutes after the sale) and left the Store. (SUF No. 14.)

After purchasing the ball (and after Mr. Gampe had left the Store), Plaintiffs remained on the second floor in the area around the mini basketballs. (SUF No. 15.) One of the NIKE Athletes who was on the second floor and still working was Semaj Harbin, who is African American. (SUF Nos. 16.)  Sometime after 9:01 p.m., Mr. Harbin walked over to the area where Plaintiffs were still standing. (SUF No. 18.)  He had not seen Mr. Stallworth purchase the ball, and was unaware that he had done so. (SUF No. 17.)  What Mr. Harbin did observe was Plaintiff S.S., a boy, playing with various mini basketballs of different colors, and at one point Mr. Harbin interacted with Mr. Stallworth by swapping with him the ball that S.S. was originally holding (that had been purchased, unbeknownst to Mr. Harbin) for a similar ball of a different color that Mr. Harbin was holding. (*See* SUF Nos. 19-20.)  Mr. Harbin, thereafter, continued to observe Plaintiffs. (SUF No. 20.)  At approximately 9:11 p.m., Plaintiffs

4

proceeded to leave the second floor of the Store and head for the exit, located on the first floor.  (SUF No. 21.)  Consequently, Mr. Harbin concluded that Plaintiffs likely had not paid and became concerned.  (SUF No. 22.)  Mr. Harbin thus spoke into the walkie-talkie headset that he and other store employees all wore, stating that he believed Plaintiffs were leaving the Store without paying for the basketball.  (SUF No. 23.)  What he said over the walkie-talkie was heard by other employees, including Magee, the Store manager.  (SUF No. 25.)  When Magee heard Mr. Harbin's statement, she was standing at the front door, opening it for consumers to exit and preventing new consumers from entering, since it was past closing time.  (SUF No. 27.)  She had been standing at the door since approximately 9:00 p.m.  (SUF No. 28.)  As confirmed by the Store's surveillance video, during this period when she was at the door, numerous individuals of various races (including those who appeared to be African American) left the Store carrying merchandise; Magee did not stop or follow any of them, and simply opened the door to allow them to leave.  (SUF No. 29.)  Indeed, Magee did the same for Plaintiffs—when they approached, she opened the door for them and allowed them to leave.  (SUF No. 33.)

When Magee heard Harbin's radio report, at about 9:12 p.m., Plaintiffs were just leaving the Store.  (SUF No. 33.)  Magee then immediately and repeatedly asked all employees over the radio whether they had processed a purchase for Plaintiffs or seen them pay for the ball, and all who responded said no.[2]  (SUF Nos. 31, 32.)  Again, by this point, Gampe (who processed the purchase) had finished his shift, clocked out at 9:03 p.m., and had already left the Store, as confirmed by a surveillance camera.  (SUF No. 26.)  Accordingly, Gampe no longer had his radio; did not hear Mr. Harbin's report; and did not (and could not) respond to Magee's radio inquiry seeking confirmation from the Store's employees.  (SUF No. 26.)

The last thing that Magee was heard to say over the walkie-talkie was "are you

---

[2] This is reflected in contemporaneous written statements by nine store employees, as well as deposition testimony from multiple witnesses.  (*See* SUF No. 32.)

**NIKE'S MOTION FOR SUMMARY JUDGMENT**

sure they didn't pay?"  (SUF No. 35.)  Mr. Harbin repeated his belief that Plaintiffs had not paid.  (SUF No. 36.)  Magee did not pick Plaintiffs out because of their race; she acted on Mr. Harbin's observations, and her team's confirmation, and only then left the Store to approach Plaintiffs approximately 30 seconds after they had exited.  (SUF No. 37.)  She quickly caught up with Mr. Stallworth, in an attempt to recover the ball if it had not been paid for, asking to see his purchase receipt.  (SUF No. 38.)  Per Mr. Stallworth's sworn testimony, Magee never reached for the ball or touched him in any manner whatsoever—indeed, in Mr. Stallworth's own words, "She wasn't even in my space."  (SUF No. 40.)  Mr. Stallworth refused to produce a receipt.[3]  (SUF No. 39.)  Magee then observed three Santa Monica Police Department ("SMPD") officers[4] standing nearby and approached them for assistance.  (SUF No. 41.)  From that point onward, there are audio and video recordings of the events at issue, by virtue of the police officers' body cameras.  Magee stated to the officers, "I'm sorry, I have a guy that walked away with my basketball and he doesn't want to give me it back.  I work at NIKE."  (SUF No. 42.)  One of the officers, Jacob Emanuel, responded, "Which guy?"  (SUF No. 44.)  Magee responded, "In the pink sweatshirt."  (SUF No. 45.)  Officer Emanuel approached Plaintiffs to investigate Magee's complaint.  (SUF No. 47.)  Plaintiff Dickerson then began recording the incident with her cell phone camera, creating yet another video record.  (SUF No. 50.)

The recordings of what occurred from the moment the police became involved, on through to the conclusion of the encounter, are clear.  Officer Emanuel approached Mr. Stallworth and asked for the basketball, stating, in a calm voice, "I have somebody who is telling me that you took it."  (SUF No. 51.)  Mr. Stallworth responded by stating that "she's lying," and then shouted at Magee, "go ask your

---

[3] The exact details of Mr. Stallworth's response are disputed (with Magee testifying that he shouted profanities at her and caused her to feel threatened, which Plaintiffs deny), but there is no dispute that he did not produce a receipt.

[4] Of the three, one was a trainee (Steven Jaen), one was supervising the trainee (Maricela Perez), and one was a regular patrol officer (Jacob Emanuel).  (SUF No. 49.)

**NIKE'S MOTION FOR SUMMARY JUDGMENT**
505086768.17

people." (SUF No. 52.) Magee responded, truthfully, "I did." (SUF No. 53.) Officer Emanuel then stated, "If you have the receipt it's no big deal," to which Mr. Stallworth replied, "I got the receipt," and pulled it out of his pocket, approximately 38 seconds after Officer Emanuel first approached him. (SUF Nos. 54, 55.)

A few seconds later, Mr. Stallworth threw the receipt to the ground next to Officer Emanuel and rolled the ball down the street. (SUF No. 56.) By this point, the other two officers had started walking over to rejoin Officer Emanuel, and one of them retrieved the ball along the way, while Officer Emanuel picked up the receipt off the ground. (SUF Nos. 57, 58.) Plaintiffs then shouted at Magee and the officers for the next several minutes. (SUF No. 61.) At no point during this entire encounter— which was effectively resolved in less than one minute—did any of the officers arrest Plaintiffs, touch Plaintiffs, "surround" Plaintiffs (as they have alleged), draw (or touch) a weapon, or even raise their voices. (SUF Nos. 62, 63.) Rather, the officers calmly listened as Plaintiffs shouted, and as Magee said, "I'm sorry." (SUF No. 60.)

After patiently listening to Mr. Stallworth complain at length, Officer Emanuel eventually asked him, "What do you want done?" (SUF No. 64.) Plaintiffs indicated that they would go back to the Store to return the ball for a refund, and Mr. Stallworth took the ball back from Officer Emanuel. (SUF No. 65.) Plaintiffs then walked back to the Store, while Magee and the officers followed far behind them. (SUF No. 66.)

Plaintiffs reentered the Store at 9:18 p.m. (SUF No. 68.) Magee and the officers entered about 30 seconds later. (SUF No. 69.) Store employees processed Plaintiffs' refund, while Plaintiffs continued to complain vociferously. (SUF No. 70.) Plaintiffs ultimately left the Store at 9:25 p.m. (SUF No. 71.)

As Plaintiffs have admitted, at no point did Magee, or anyone else, ever make any reference whatsoever to the race of any Plaintiff. (SUF No. 72.) Nor is there any evidence at all that the employee who mistakenly reported that Plaintiffs had not paid—Mr. Harbin, who is himself African American—referred to Plaintiffs' race or relied on race in any manner. Rather, the unrefuted evidence establishes that Mr.

7

Harbin's belief that Plaintiffs had not paid for the basketball was simply an honest mistake based on his observations of their activities, not their race.  Indeed, Mr. Harbin repeatedly apologized after the incident for his mistake.  (SUF No. 73.)  Moreover, NIKE's loss prevention policies explicitly forbid consideration of race when assessing potential shoplifting.  (SUF No. 79.)

Following the incident, Magee was terminated for having violated NIKE policy, which for safety reasons prohibits retail employees from leaving a store in an attempt to recover product for *any* reason (even where, as here, such conduct was perfectly lawful, as detailed below).  (SUF No. 75.)  NIKE rigorously enforces this zero-tolerance policy and has historically terminated retail employees for engaging in such behavior.  (SUF No 76.)  Moreover, NIKE has no record of any consumer ever previously complaining about Magee at all.  (SUF No. 81.)

## III.   <u>JUDICIAL STANDARD</u>

A party is entitled to summary judgment where there is no genuine dispute of material fact.  Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of identifying an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On issues where the movant will not have the burden of proof at trial, the movant meets its burden simply by showing an "absence of evidence" to support the opposing party's claim.  *Id.* at 325.  "Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial."  *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 947 (C.D. Cal. 2013) (citing *Celotex*).  "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.   <u>PLAINTIFFS' FEDERAL CLAIMS HAVE NO LEGAL MERIT</u>

### A.   <u>Plaintiffs Cannot Support Their 42 U.S.C. § 1983 Claim</u>

Section 1983 is intended to redress the deprivation of federal rights committed

by state actors.  To support a claim under Section 1983, a plaintiff must prove: 1) a deprivation of a federal right, and 2) that the deprivation was committed by a person acting under color of state law.  *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).  As a general matter, it is presumed that private parties are **not** acting under the color of state law.  *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).  Thus, to face liability under Section 1983, a private party must "conspire" with the state, forming "an agreement or meeting of the minds to violate constitutional rights."  *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (*en banc*).  Commercial establishments and their employees only face liability under Section 1983 when: "[1] the police have a pre-arranged plan with the store *and* [2] under the plan police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause."  *See Copeland v. K Mart Corp.*, 161 F.3d 12 (9th Cir. 1998) (italics in original) (citing *Cruz v. Donnelly*, 727 F.2d 79, 81 (3d Cir. 1984)).  "If the police promise to arrest anyone the shopkeeper designates, then the shopkeeper is exercising the state's function and is treated as if he were the state."  *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 435-36 (7th Cir. 1986).  However, even where police arrest a particular individual at a merchant's request, that fact alone does not demonstrate the requisite conspiracy.  *Id.*

### 1.  Defendant Magee Did Not Act Under the Color of Law

Plaintiffs' Section 1983 claim fails as a matter of law because Defendants are private parties rather than state actors, and there is no evidence of the requisite "pre-arranged plan" between Defendants and the SMPD whereby "police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause."  *See Copeland*, 161 F.3d at 12.[5]  Indeed, the evidence is to the

---

[5] The Court initially dismissed Plaintiffs' Section 1983 claim due to their failure even to *allege* any such conspiracy.  See Dkt. # 34, pp. 5-7.  Plaintiffs thereafter amended their complaint to allege the existence of such an "agreement."  See FAC, Dkt. # 43, ¶ 14; see also SAC, Dkt. # 69, ¶ 15 (same); TAC, Dkt. # 89, ¶ 16 (same).  The Court then allowed Plaintiffs to proceed with their Section 1983 claim, finding the allegation

contrary.  The officer who approached Plaintiffs and primarily interacted with them is Jacob Emanuel.  During his deposition as a Rule 30(b)(6) designee for the SMPD,[6] Officer Emanuel was read the entirety of Plaintiffs' allegation of an "agreement" between the SMPD and the Third Street Promenade merchants, and asked whether he was aware of *any* such agreement.  (SUF No. 77 (Emanuel 30(b)(6), pp. 63:17-66:6).)  His answer was a categorical "no."  (*Id.*)  Additionally, the SMPD designated Sgt. Maury Sumlin as its Rule 30(b)(6) witness regarding the SMPD's "policies, practices and procedures REGARDING responding to requests for assistance in the investigation, stop, detention or arrest of a PERSON, including shoppers, store patrons and pedestrians, at the request of employee(s) of businesses on the Third Street Promenade."  (Sumlin 30(b)(6), pp. 13:7-14:8, Ex. 94.)  Sgt. Sumlin testified at length about such matters—which do not entail any "agreement" or "pre-arranged plan" with any merchant on the Third Street Promenade, including NIKE.  (SUF No. 77 (Sumlin 30(b)(6), pp. 31:11 - 51:6).)  Indeed, Sumlin testified that the SMPD's policies and protocols that apply to the Third Street Promenade are the same as those that apply throughout the entire City of Santa Monica, *i.e.*, there are no "special" policies for the Third Street Promenade.  (SUF No. 77 (Sumlin 30(b)(6), p. 50:10-51:6).)

 Moreover, in response to interrogatories asking Plaintiffs to state *all facts* in support of their allegation of an "agreement" between the SMPD and the merchants on the Third Street Promenade (*see* TAC ¶ 16), Plaintiffs were unable to identify *any facts* demonstrating any "agreement" or "pre-arranged plan," let alone a plan by which "police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause," as the law requires.  *See Copeland*, 161 F.3d at 12; *Cruz*, 727 F.2d at 81.  Rather, Plaintiffs simply referred to a telephone

---

sufficient to survive dismissal at the pleadings stage.  *See* Dkt. # 68, pp. 5-6.

[6] The SMPD designated Officer Emanuel as its FRCP 30(b)(6) designee on a variety of topics, including the July 5, 2019 incident and all communications between the SMPD, Defendant Magee, and other NIKE employees regarding same.  (SUF No. 78 (Emanuel 30(b)(6), pp. 10:22-11:5, Ex. 1).)

**NIKE'S MOTION FOR SUMMARY JUDGMENT**

conversation, which occurred the day after the incident, between Officer Emanuel and Ms. Dickerson, at her insistence.  (SUF No. 77.)  During that conversation, according to Ms. Dickerson, Officer Emanuel explained that he had approached Plaintiffs to investigate potential shoplifting after an individual "in a NIKE uniform" approached him for assistance; that shoplifting frequently occurs in the Third Street Promenade area and thus that it is common for retail employees to approach police asking for assistance; that when this occurs, "the officer(s) decide whether or not to locate, detain and interrogate persons suspected of a crime"; and that, "[i]n this case, Emanuel said he 'chose' to stop [Plaintiffs]."  (SUF No. 77.)  Even taken at face-value, this is not evidence of any "conspiracy agreement," and certainly is not sufficient to render Defendants state actors.  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 899-900 (9th Cir. 2008) ("Plaintiff's bare allegation that '[t]he defendants acted in concert' [with police]...is insufficient to establish joint action. ... Merely complaining to the police does not convert a private party into a state actor."); *Kidd v. Marshalls of Calif., LLC*, 2012 WL 833027, at *3 (C.D. Cal. Jan. 17, 2012) ("merely complaining to the police, or even the execution of a sworn complaint which forms the basis of an arrest, is not enough to convert a private party's actions into state actions").

Finally, as the Court previously observed in this very case, "a store and its employees may be liable under Section 1983 as state actors 'if the police have a pre-arranged plan with the store and under the plan police will **arrest** anyone identified as a shoplifter without independently evaluating the presence of probable cause.'"  *See* Dkt. # 68, pp. 5-6 (emphasis added) (quoting *Copeland*, 161 F.3d at 12; *Cruz*, 727 F.2d at 81); *see also Gramenos*, 797 F.2d at 435-36.  It is undisputed that Plaintiffs were not arrested; indeed, Plaintiffs do not even *allege* having been arrested.  *See* TAC, ¶¶ 89-101; *see also* SUF No. 62; *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (distinguishing arrest from investigatory stop).

### 2.  Plaintiffs Were Not Deprived of a Federal Right

Another independent, fatal impediment to Plaintiffs' Section 1983 claim is that

11

there is no evidence to support their allegation that they were deprived of their Fourth Amendment rights.  The Fourth Amendment permits brief investigative stops when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *United States v. Cortez*, 449 U.S. 411, 412 (1981); *see also Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).  To justify such a stop, only "reasonable suspicion" is necessary, which is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less than is necessary for probable cause."  *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal quote marks omitted).  Only "some minimal level of objective justification" is necessary for the stop.  *See INS v. Delgado*, 466 U.S. 210, 217 (1984).  Information supplied by another person, and not based on the officer's personal observation, may serve as the basis for a stop.  *See Adams v. Williams*, 407 U.S. 143, 147 (1972).  Here, there is no triable issue of fact regarding the basis on which Officer Emanuel approached Plaintiffs—indeed, that entire sequence of events is on video.  It is undisputed that his information came from a live complainant (Magee); that Magee verbally identified herself as a NIKE Store employee; that Emanuel noted her NIKE Store name badge; that Magee positively identified Mr. Stallworth; and that Magee remained on the scene at all times.  (SUF Nos. 41-46, 67.)  Thus, the SMPD's encounter with Plaintiffs (which was effectively resolved in less than one minute) does not amount to a violation of Plaintiffs' constitutional rights as a matter of law.

## B.    Mr. Stallworth Cannot Support His 42 U.S.C. § 1981 Claim

Mr. Stallworth bases his Section 1981 claim on the statute's "full and equal benefit of all laws" prong.  *See* TAC, ¶¶ 136-37.  In support of his allegation that he was deprived of the benefit of "all laws," he alleges that Magee's actions toward him constitute a violation of California's Unruh Act (Cal. Civ. Code § 51.5), which prohibits a business from engaging in racial discrimination.[7]  *See* TAC, ¶¶ 136-37.

---

[7] In support of his Section 1981 claim, Mr. Stallworth also alleges that Defendants violated his rights under the Fourth Amendment and various provisions of the California Constitution, *i.e.*, Article I, Sections 7, 13 and 31.  *See* TAC ¶ 137.  All of

12

1  "[Section] 1981 can be violated only by purposeful discrimination." *Astre v.*

2  *McQuaid*, 804 Fed. Appx. 665, 666 (9th Cir. 2020) (quoting *Gen. Bldg. Contractors*

3  *Ass'n, Inc. v. Pa.*, 458 U.S. 375, 391 (1982)).  Moreover, as the Supreme Court

4  recently held, the defendant's alleged racial animus must be the "but for" cause of the

5  complained-of conduct—not merely a contributing factor.  *Comcast Corp. v.*

6  *NAAAOM*, 140 S. Ct. 1009, 1019 (2020).

7          Here, Mr. Stallworth's claim is based on his allegation that Magee identified

8  him as a potential shoplifter on the basis of his race, to wit: "Magee saw a Black man

9  in a hoodie leave her store with a basketball and she sprang into action."  TAC, ¶ 86.

10  This allegation is devoid of evidentiary support—on the contrary, the unrefuted,

11  unanimous deposition testimony from the employees who were working in the Store

12  at the time of the incident, as well as contemporaneous written statements provided by

13  nine (9) such employees, some of whom were African American, all establish that

14  **Magee was not even the person who (mistakenly) identified Mr. Stallworth as**

15  **having failed to pay for the ball**.  *See* SUF No. 16-25 (and cited evidence).  Rather,

16  as detailed in Section II, above, an African American employee, Semaj Harbin,

17  erroneously reported that Plaintiffs had not paid for the ball, due to an honest mistake

18  on his part resulting from the circumstances following the purchase.  *See id.*  In

19  response to Mr. Harbin's report, Magee repeatedly asked all employees over her radio

20  whether any of them had processed or seen a purchase by Plaintiffs, and all of the

21  responding employees stated that they had not.  *See id.*  Magee then approached Mr.

22  Stallworth in an attempt to recover the ball if it had not been paid for and asked for

23  proof of purchase.  *See id.*

24          The foregoing evidence is unrefuted and leaves no triable issue of fact as to

25
_____

26  the foregoing provisions, however, only apply to the state, not private actors.  *See*
    *Homestead Sav. v. Darmiento*, 230 Cal. App. 3d 424, 431 (1991); *see People v.*

27  *Sahagun*, 89 Cal. App. 3d 1, 19 (1979).  As detailed in Sections IV.A.1 and IV.A.2,
    above: (i) Defendants are private parties, not state actors, and there is no evidence to

28  support any alleged "conspiracy" between any Defendant and the state, and (ii) there
    was no deprivation of Plaintiffs' constitutional rights, in any event.

whether Mr. Stallworth's race was the "but for" cause of Magee's conduct —plainly, it was not.  Indeed, surveillance camera footage shows that in the minutes leading up to Plaintiffs' departure from the Store, Magee opened the door to let *other* African American patrons leave the Store, with merchandise in hand, without stopping or following any of them to request proof of purchase.  SUF No. 29.  Indeed, the surveillance camera footage shows that **Magee opened the door for *Mr. Stallworth, himself* (and the rest of Plaintiffs) and let them leave the Store, without incident**. It is clear what caused Magee to act.  It was only *after* Magee had heard Mr. Harbin's report and discussed it with the other employees over the radio that she then proceeded to follow Plaintiffs (about 30 seconds after they had left the Store) to investigate whether the ball had been purchased.   Magee's decision to follow and approach Mr. Stallworth was prompted by Mr. Harbin's report and his colleagues' confirmation—there is absolutely no evidence to the contrary.

"If the defendant would have responded the same way to the plaintiff even if he had been white, an ordinary speaker of English would say that the plaintiff received the 'same' legally protected right as a white person." *Comcast Corp.*, 140 S. Ct. at 1015.  Here, Mr. Stallworth is unable to provide any evidence that Magee would not have followed and approached a white person exiting the Store under the same circumstances (*i.e.*, faced with a report from another employee that the customer had not paid, confirmed by repeated inquiries to all other employees).  Accordingly, the Court should grant summary judgment as to the claim.  *See id.*; *see also Dewalt Prods., Inc. v. City of Portland*, 829 Fed. Appx. 226, 227 (9th Cir. 2020) (affirming summary judgment on Section 1981 claim where objective non-race facts supported adverse action) (citing *Comcast Corp.*, 140 S. Ct. at 1019).

## C.    Plaintiffs Cannot Support Their 42 U.S.C. § 1985 Claim

A claim under Section 1985 requires: 1) a conspiracy; 2) a purpose to deprive any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act by one of the conspirators in furtherance of

14

505086768.17

the conspiracy; and 4) a personal injury, injury to property, or a deprivation of any right or privilege of a citizen of the United States. *Collins v. Hardyman*, 341 U.S. 651, 659 (1951). Thus, a plaintiff pursuing a claim under Section 1985(3) must prove a conspiracy to interfere with constitutionally or federally protected rights, motivated by invidious discrimination. *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Moreover, entity defendants are not vicariously liable under Section 1985 for the actions of their employees. *Howard v. Topeka-Shawnee Cty.*, 578 F.Supp. 534, 539 (D. Kan. 1983); *see also Villegas v. Duck*, 242 F.3d 385 (9th Cir. 2000).

As detailed in Section II, above, there is no evidence of a "conspiracy" between any defendant and the SMPD. For this reason, alone, the Section 1985 claim fails. Moreover, "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. S&L Assn. v. Novotny*, 442 U.S. 366, 372 (1979). Here, Plaintiffs' Section 1985 claim is predicted on their underlying Section 1983 and 1981 claims. As detailed above, however, NIKE is entitled to judgment on both of those claims, and thus the Section 1985 claim likewise fails. Finally, even if *arguendo* Plaintiffs had alleged conduct by Magee that violates Section 1985 (which they have not), the claim would not lie against NIKE as there is no vicarious liability for such claims. *See Howard*, 578 F.Supp at 539.

## V.    PLAINTIFFS' STATE LAW CLAIMS HAVE NO LEGAL MERIT

### A.    Statutory Privileges Bar Plaintiffs' State-Law Claims

Plaintiffs have also alleged a variety of state law torts. All of these claims are based on Plaintiffs' allegation that they suffered harm as a result of (i) Magee's leaving the Store in an attempt to recover the ball and asking for proof of purchase, and then, after Mr. Stallworth refused to show a receipt, (ii) Magee's complaining to the nearby police officers and the officers' subsequent interaction with Plaintiffs. As a threshold matter—even before delving into the elements of Plaintiffs' state law claims and the evidence (or lack thereof) regarding same—the claims are barred by two distinct California statutory privileges, as detailed below.

NIKE'S MOTION FOR SUMMARY JUDGMENT

505086768.17

1.    <u>California's Merchant's Privilege Bars Plaintiffs' Claims</u>

Under California's statutory merchant's privilege, "[a] merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises."  Cal. Pen. Code § 490.5(f)(1).  "In any civil action brought by any person resulting from a detention or arrest by a merchant, it shall be a defense to such action that the merchant detaining or arresting such person had probable cause to believe that the person had stolen or attempted to steal merchandise and that the merchant acted reasonably under all the circumstances."  Cal. Pen. Code § 490.5(f)(7).  Courts have held that causes of action arising out of the facts leading to, and including, alleged detention are barred by this statute.  *See Sheridan v. Target Corp.*, No. 10-0055, 2011 WL 13224879, at *4 (C.D. Cal. Jan. 10, 2011) (assault, false imprisonment, IIED, and defamation claims all barred by merchant's privilege).

Here, even assuming *arguendo* that Magee's conduct in approaching Mr. Stallworth and asking for proof of purchase might amount to a "detention" or otherwise be actionable, the undisputed material facts establish that Magee had "probable cause," as contemplated by the merchant's privilege, to suspect that Mr. Stallworth had not paid for the ball.  *Collyer v. S.H. Kress Co.*, 5 Cal. 2d 175, 181 (1936) ("[w]hat is probable cause, as has been often announced, is not a question of fact for the jury, but one of law for the court, to be decided in accordance with the circumstances").  As detailed in Section II, above, Mr. Harbin developed a reasonable (albeit mistaken) belief that Plaintiffs had not paid for the ball, and after reporting it over the radio, Magee checked with other employees before taking action.  She then approached Mr. Stallworth to inquire about the ball, never even touching him.  To the extent Plaintiffs' claims are based on this conduct, the statutory merchant's privilege squarely bars them.  Cal. Pen. Code § 490.5(f)(7); *see also Sheridan*, 2011 WL 13224879, at *4; *see also Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 718 (1994)

16

("reasonable interrogation" protected by merchant's privilege) (citing *Collyer*, 5 Cal.2d at 180-81 (20-minute detention was reasonable)); *see also In re O.P.*, No. F044633, 2004 WL 2713941, at \*13 (Cal. Ct. App. Nov. 30, 2004).

      2.  <u>Section 47(b) Bars All of Plaintiffs' Claims to the Extent They Rely On Magee's Complaint to SMPD or Any Subsequent SMPD Conduct</u>

Under Section 47(b) of the California Civil Code, reports to police of suspected criminal activities—even allegedly false reports made with malice (which Magee's was not)—are absolutely privileged and may not serve as predicates for tort claims, except the tort of malicious prosecution.[8] *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1090 (C.D. Cal. 2009). The privilege is intended to "assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing." *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990). The California Supreme Court has held that Section 47(b)'s privilege bars tort claims such as IIED, defamation, and false imprisonment that arise from a defendant's communications to the police. *See Hagberg v. Calif. Fed. Bank*, 32 Cal. 4th 350, 375 (2004); *Mulder v. Pilot Air*, 32 Cal. 4th 384, 387 (2004); *see also Cox v. Griffin*, 34 Cal. App. 5th 440, 449 (2019). Accordingly, all of Plaintiffs' claims are barred to the extent they rely on Magee's contacting the police or their subsequent conduct. *See id.* Thus, *neither* Magee's brief encounter with Plaintiffs after leaving the Store *nor* the subsequent involvement of the SMPD can serve as the basis for any of Plaintiffs' claims, and for this reason, alone, the Court should grant summary judgment.

---

[8] On September 30, 2020, Governor Newsom signed into law AB 1775, amending Section 47(b), effective January 1, 2021. *See* Cal. Const., art. IV, section 8(c)(1). This legislation added subsection (5) to Section 47(b), which creates a carve-out from the privilege where a person makes a false report to the police "knowing that the report is false, or with reckless disregard for the truth or falsity of the report." This new provision, however, does not apply retroactively to the subject incident, which occurred in 2019. *See* Cal. Civ. Code § 3 ("No part of [the Civil Code] is retroactive, unless expressly so declared."); *see also Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1207 (1988) ("It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent."); *Talaie v. Wells Fargo Bank, N.A.*, 808 F.3d 410, 411-12 (9th Cir. 2015). Further, Magee's report clearly was *not* knowingly or recklessly false.

### B.   Plaintiffs Cannot Support Their Unruh Act Claim

Even if *arguendo* the statutory privileges discussed above did **not** bar Plaintiffs' state law claims (which they do), summary judgment would still be warranted as to Plaintiffs' Unruh Act claim (Cal. Civ. Code § 51.5).  Such a claim requires, "(1) [that defendant] denied [p]laintiff full and equal accommodations, (2) that a substantial reason for [defendant's conduct] was because of [p]laintiff's race, (3) [that] [p]laintiff was harmed, and (4) [that defendant's] actions were a substantial factor in causing [p]laintiff's harms."  *Grant v. Starbucks Corp.*, No. 18-8927, 2019 WL 8112465, at *6 (C.D. Cal. Sep. 24, 2019) (citing CACI 3060).  Some courts have held that on summary judgment an Unruh Act claim is subject to a three-step burden-shifting analytical framework, first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) in the context of employment discrimination claims.  *See Mackey v. Bd. of Trustees of Calif. State Univ.*, 31 Cal. App. 5th 640, 655 (2019).  Under this framework, "(1) the plaintiff bears a prima facie burden to show discrimination, shifting the burden to (2) the defendant to proffer a race-neutral reason for the adverse action, which again shifts the burden to (3) the plaintiff to show the reason given is pretextual or some other evidence of discriminatory motive."  *Id*.  "The specific elements of a prima facie case may vary depending on the particular facts."  *Id*. at 661.  Notwithstanding the shifting burden of production, plaintiffs retain the ultimate burden of proving that the challenged action was the result of intentional discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-11 (1993).

First, Plaintiffs have no *prima facie* evidence to satisfy the first two elements of the Unruh Act.  Regarding the "full and equal accommodations" element, there is no evidence that Plaintiffs were denied service at the Store.  It is undisputed that Plaintiffs made their purchase and thereafter left the Store.  (*See* SUF Nos. 14, 15, 33.) NIKE is aware of no authority for the proposition that Magee's subsequent inquiry about their purchase and request for a receipt amounts to a denial of "full and equal accommodations."  Further, as detailed in Section II, above, the evidence

18

demonstrates that race was not a factor, let alone a substantial factor in the incident, negating the second element under the Unruh Act.  Plaintiffs' speculative assumption to the contrary is inadequate to withstand summary judgment.  *See, e.g., Jenkins v. MCI Telecom. Corp.*, 973 F. Supp. 1133, 1137 (C.D. Cal. 1997); *Onokohwomo v. Sterling Jewelers, Inc.*, No. 20-0261, 2021 WL 1245360, at *3 (C.D. Cal. Mar. 3, 2021).

Even assuming *arguendo* that Plaintiffs could satisfy their *prima facie* burden, the evidence demonstrates a legitimate business reason, *i.e.*, to investigate potential shoplifting.  "[A defendant] is entitled to summary judgment if, considering its innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that [the defendant's] actual motive was discriminatory."  *Alcala v. Best Buy Stores, LP*, No. 11-0798, 2012 WL 6138332, at *7 (C.D. Cal. Nov. 7, 2012) (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 361 (2000)).  Unrefuted evidence establishes that the Store had been experiencing significant product theft during the years prior to Magee becoming the Store's manager, and that Magee had made progress in reducing such theft since becoming manager.  (*See* SUF No. 6.)  Magee's approaching Mr. Stallworth, prompted by Mr. Harbin's mistaken report and subsequent corroboration by other employees, was plainly based upon legitimate nondiscriminatory reasons, which Plaintiffs cannot logically overcome.  *See Guz*, 24 Cal.4th at 355-56; *see also Hicks v. KNTV Television, Inc.*, 160 Cal. App. 4th 994, 1003 (2008) (to survive summary judgment, "[P]laintiff must do more than raise the inference that the [defendant's] asserted reason is false.  [A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, and that discrimination was the real reason.") (emphasis in original); *see also Le Bourgeois v. Fireplace Mfrs., Inc.*, 68 Cal. App. 4th 1049, 1058 (1998).

### C.    Mr. Stallworth Cannot Support His Ralph Act Claim

A claim under the Ralph Act (Cal. Civ. Code § 51.7) requires: 1) the defendant threatened or committed **violent acts** against the plaintiff; 2) a motivating reason was

19

race (or other protected status); 3) the plaintiff was harmed; and 4) the defendant's conduct was a substantial factor in causing the harm. *Rodriguez v. Contra Costa Cty.*, 2013 WL 5946112, at *6 (N.D. Cal. Nov. 5, 2013); *see also Campbell v. Feld Entertainment*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014). Here, Stallworth's Ralph Act claim is barred by his sworn testimony (even apart from the statutory privileges discussed above). At his deposition, he admitted, "Nobody was grabbing me. In this instance nobody was grabbing me or holding my hand, you know, nothing of that sort, Mr. Sweeney. That would not be true. Nobody touched me." (*See* Stallworth depo, p. 102:1-5.) Indeed, he admitted that Magee was "**wasn't even in my space**." (*Id.*, p. 102:10.) Further, he testified that Magee did not even make any *verbal* threats toward him. (*Id.*, p. 105:13-21 ("I do not recall her making verbal threats to me.")).)

### D.    Mr. Stallworth Cannot Support His Assault Claim

To support his claim of assault, Mr. Stallworth must prove, *inter alia*, that Ms. Magee acted with intent to cause him harmful or offensive contact, or threatened to do so; that he reasonably believed she was about to do so; and that her conduct was a substantial factor in causing him actual harm. *See So v. Shin*, 212 Cal. App. 4th 652, 668-69 (2013). Here, the evidence precludes Mr. Stallworth's assault claim for much the same reasons as discussed above in connection with his Ralph Act claim, *i.e.*, he admitted that Magee never touched him, "wasn't even in his space," and did not even *verbally* threaten him. *See, e.g., Sheridan*, 2011 WL 13224879 at *8 fn. 7 (granting MSJ on assault claim as verbal exchange showed no indication of imminent harm).

### E.    Plaintiffs Cannot Support Their IIED Claim

Under California law, a plaintiff suing for intentional infliction of emotional distress ("IIED") must prove, *inter alia*, that he or she suffered harm as a result of "extreme and outrageous conduct" by the defendant that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1029-51 (2009) (statements that were "vulgar and highly offensive" fell far *short* of requisite conduct); *see also Alcorn v. Anbro Eng'g Inc.*, 2 Cal. 3d 493, 499,

20

n.5 (1970).  The tort does not encompass "insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Hughes*, 46 Cal. 4th at 1051.

Again, as detailed in Section V.A, above, the merchant's privilege (Cal. Pen. Code § 490.5(f)) and the police-reporting privilege (Cal. Civ. Code § 47(b)) alone bar Plaintiffs' IIED claim.  *See Cox*, 34 Cal. App. at 449 ("[Section 47(b)] bars causes of action for [] intentional infliction of emotional distress, even if the police report was made maliciously"); *see also Hagberg*, 32 Cal. 4th at 375; *Mulder*, 32 Cal. 4th 387.

Even if *arguendo* the foregoing privileges did not apply, NIKE would still be entitled to summary judgment on the claim.  "[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."  *Fowler v. Varian Assocs.*, 196 Cal. App. 3d 34, 44 (1987); *see also Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998); *Sheridan*, 2011 WL 13224879, at *6.  Here, on its face, Magee's conduct in acting on Mr. Harbin's observations and approaching Plaintiffs in an attempt to recover the ball if it had not been paid for does not amount to "extreme and outrageous" conduct sufficient to support an IIED claim.  *See Sheridan*, 2011 WL 13224879, at *4-6 (as a matter of law, defendants' conduct not "outrageous" despite having "moved [plaintiff] to [a] security room, [] handcuffed him, asked him questions for approximately an hour").

### F.    Mr. Stallworth Cannot Support His Slander Claim

Mr. Stallworth's slander claim likewise fails as a matter of law.  First, as detailed in Section V.A, above, the claim is barred by statutory privileges.  Moreover, no evidence supports the claim even if *arguendo* those privileges did not apply.

A claim for slander requires: 1) a publication that is; 2) false; 3) defamatory; 4) unprivileged; and 5) has a natural tendency to injure or that causes special damage. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007).  "For publication to occur the defamatory matter must be communicated to a third party who understands the defamatory meaning and its applicability to the plaintiff."  *Neary v. Regents of Univ. of Calif.*, 185

21

Cal. App. 3d 1136, 1147 (1986).

Mr. Stallworth's slander claim fails because there is no evidence that any third party understood the alleged defamatory meaning and its applicability to him.  His slander claim survived the pleading stage because "Plaintiffs identified Mr. Stallworth's friend, Khalil…as the third party who observed and heard the alleged defamatory statements." (*See* Dkt. # 68.)  However, though Khalil may have heard the alleged defamatory information, he did not believe it and it did not change his opinion of Mr. Stallworth.  SUF No. 82.  At Khalil's deposition, when asked whether Khalil believed Mr. Stallworth stole the basketball, he stated, "[n]o, I didn't, only because - - well, there's a few reasons when I think about it now, but at the time, no, because that's not really in Joel's character."  SUF No. 82 (K. Smith Depo at p. 85:22-25).  Further, Khalil confirmed that it was impossible for him to believe Mr. Stallworth had not paid for the basketball because "we all saw the receipt."  SUF No. 82 (K. Smith Depo at p. 86:4-6).  For Mr. Stallworth to have suffered reputational harm, Khalil would have had to *believe* that Mr. Stallworth did in fact steal the basketball—which he admittedly did not.

## G.   Mr. Stallworth Cannot Support His False Imprisonment Claim

Mr. Stallworth's false imprisonment claim is also subject to summary judgment.  First, as detailed in Section V.A, above, to the extent the claim is based on Mr. Stallworth's encounter with the SMPD, the claim is barred by Cal. Civ. Code § 47(b).  *See, e.g., Cox*, 34 Cal. App. 5th at 449 ("Implementing [S]ection 47(b), the California Supreme Court has held that this privilege applies to false imprisonment") (citing *Hagberg*, 32 Cal. 4th at 375; *Mulder*, 32 Cal. 4th at 387); *see also Kesmodel v. Rand*, 119 Cal. App. 4th 1128, 1135 (2004).  Second, to the extent the claim is based on Magee's conduct toward Mr. Stallworth *before* involving the police, it is barred by the merchant's privilege.  *See* Cal. Pen. Code § 490.5(f); *Sheridan*, 2011 WL 13224879, at *4; *In re O.P.*, 2004 WL 2713941, at *13.

Moreover, even apart from the foregoing privileges, there is no evidence to

22

support the false imprisonment claim.  The elements of false imprisonment are (1) the defendant's intentional deprivation of the plaintiff's freedom of movement; (2) compelling the plaintiff to stay somewhere for some appreciable time; (3) without consent; (4) resulting in actual harm to the plaintiff; and (5) the defendant's conduct being a substantial factor in causing the harm.  *See* CACI 1400; *see also Collins v. County of Los Angeles*, 241 Cal. App. 2d 451, 459-60 (1966); *Casillas v. Home Depot USA, Inc.*, No. 18-6325, 2018 WL 6431007, at *5 (C.D. Cal. Sept. 20, 2018) (false imprisonment entails forcibly restricting plaintiff to a "confined space").  Here, Mr. Stallworth has testified that Magee never confined him in any manner.  (*See* Stallworth Depo, p. 102:7-12)  ("Q:  She wasn't blocking you in any way, was she?  A:  She was not in my -- she was in my rear.  She wasn't even in my space at this time.")  Indeed, Mr. Stallworth testified that he "moved out of the way" when Magee approached him during the initial encounter.  (*See* Stallworth Depo, p. 104:1-5.)  Finally, assuming *arguendo* that Mr. Stallworth was confined for the few seconds at issue, he was not *harmed* by the confinement, as is required.  *See* CACI 1400.

## H.    Plaintiffs Cannot Support Their Negligent Supervision Claim

Finally, the Court should likewise grant summary judgment as to Plaintiffs' claim for negligent supervision and retention against NIKE.  Such claim requires: 1) the defendant hired an employee; 2) the employee became unfit or incompetent to perform her work; 3) the defendant knew or should have known that the employee became unfit or incompetent and that this unfitness or incompetence created a particular risk to others; 4) the employee's unfitness or incompetence harmed the plaintiff; and 5) the employer's negligence in supervising or retaining the employee was a substantial factor in causing the plaintiff's harm.  *See Jackson v. AEG Live, LLC*, 233 Cal. App. 4th 1156, 1186 (2015).  A duty of care to third persons arises only when a risk of harm to such persons by the employee was reasonably foreseeable. *Federico v. Superior Court*, 59 Cal. App. 4th 1207, 1214 (1997).  "To establish negligent supervision, a plaintiff must show that a person in a supervisorial position

23

over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v.*
*County of Riverside*, 238 Cal. App. 4th 889, 902 (2015).

First, Plaintiffs' claim for negligent supervision and retention—like all of their
claims in this action—is based on Plaintiffs' alleged harm resulting from Magee's
conduct toward them after she left the Store.  As detailed in Section V.A above,
however, all of Plaintiffs' state law claims based on such conduct are barred by the
merchant's privilege of Cal. Pen. Code § 490.5(f) and the police-reporting privilege of
Cal. Civ. Code § 47(b).  As such, even if *arguendo* Plaintiffs had evidence to support
the elements of the claim, it would be barred by statute.

Moreover, there is no evidence that Magee had previously followed any
consumer outside of a NIKE store in an attempt to retrieve product, such that there
was a foreseeable risk of her doing so here that NIKE failed to address.  On the
contrary, NIKE Retail uniformly *terminates* any employees who do so (even where, as
here, the conduct is lawful), since it violates NIKE policy.  (SUF No. 76.)  Indeed, that
is exactly what NIKE Retail did here when it learned that Magee had violated the
policy against leaving the Store to pursue a consumer—it terminated her, despite the
lack of any indication that she had ever done this before, let alone knowledge that she
had done so on the part of her supervisors.[9]  (SUF Nos. 75, 81.)  Plaintiffs thus cannot
demonstrate that NIKE's supervision of her was a substantial factor in causing
Plaintiff's alleged harm as required.  *See Jackson*, 233 Cal. App. 4th 1186.  Thus, the
Court should grant summary judgment on this basis, as well (apart from the statutory
privileges barring the claim).  *See Z.V.*, 238 Cal. App. 4th at 902-03.

## I.    **Plaintiffs Cannot Recover Punitive Damages Against NIKE**

Even if *arguendo* Plaintiffs could establish any of their causes of action, the
Court should grant this motion as to their punitive damages claims.  Section 3294 of

---

[9] Further, although the facts detailed in Section II, above, plainly dispel any
reasonable notion that race played any role in the subject incident, it bears noting that
NIKE's loss prevention policies, on which Magee was trained, explicitly forbid
consideration of race in assessing potential shoplifting.  (SUF Nos. 79, 80.)

**NIKE'S MOTION FOR SUMMARY JUDGMENT**

the California Civil Code permits the recovery of punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  A plaintiff may not recover punitive damages unless the defendant acted with the intent to injure or engaged in "despicable conduct...so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people."  *See In re First Alliance Mortg. Co.,* 471 F.3d 977, 998-99 (9th Cir. 2006).  The standard for punitive damages as to Plaintiffs' federal claims is similar.  *See, e.g., Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).  Further, under California law, a *corporate entity* cannot be liable for punitive damages resulting from its employees' acts unless an officer, director or managing agent of the corporation: i) had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others; ii) authorized or ratified the conduct giving rise to punitive damages; or iii) was personally guilty of such conduct.  Cal. Civ. Code § 3294(b); *see also College Hospital, Inc. v. Superior Court*, 8 Cal. 4th 704, 721 (1994).  Here, the facts detailed in Section II, above, contradict any reasonable notion that Magee engaged in the sort of "despicable conduct" necessary to support punitive damages.  Moreover, even if *arguendo* Magee's conduct were found to meet the substantive standard (which it does not), there is no evidence that any director, officer or managing agent of NIKE engaged in any of the conduct required to subject NIKE to punitive damages.

|                          | Respectfully submitted,          |
|--------------------------|----------------------------------|
|                          | K&L GATES LLP                    |
| Dated:  October 4, 2021  | By:  /s/ Kevin S. Asfour         |
|                          | Paul W. Sweeney, Jr.             |
|                          | Kevin S. Asfour                  |
|                          | Trevor J. Wynn                   |
|                          |                                  |
|                          | Attorneys for Defendants         |
|                          | NIKE RETAIL SERVICES, INC. and   |
|                          | NIKE, INC.                       |

**NIKE'S MOTION FOR SUMMARY JUDGMENT**

505086768.17